J. G. WILSON, *Clerk.*

---

WILLIAM T. NEWBY, *et al.*, Plaintiffs in Error, *v.* TERRITORY OF OREGON, Defendant in Error.

*Error to Yamhill, and Petition for New Trial.*

1. A party cannot apply for a new trial in the District Court, and, being there denied, apply, on the same grounds, to the Supreme Court therefor.
2. What constitutes an unlawful assemblage under the statute.

OLNEY, J. The petitioners having been convicted, in the District Court of Yamhill County, of the crime of riot, have applied to this court, in pursuance of the statute, for a new trial.

They allege that the jury misunderstood the instructions of the court, and they produce the affidavits of several of the jurors of that fact. If jurors could be allowed to impeach their verdict by such affidavits, and if this jury mistook their instructions, and even if the instructions were erroneous, still

we are satisfied that the verdict is correct upon the evidence, and ought not,. therefore, to be set aside.

The record does not show the objection that a new trial was applied for in the District Court.

We are not prepared to say that a second application could not be made under proper circumstances; but the two courts have concurrent jurisdiction to grant new trials; and a party cannot be allowed to experiment first in the one court and then in the other, for the same cause, or for any cause of which he might, by due diligence, have availed himself on the first application.

We shall not, at this time, establish the rule, that under no circumstances will such affidavits, as are offered in support of this petition, be received. They have been received in some courts, and rejected in others; and a majority of this court would reject them, as at present advised, were it not that the case can be disposed of on other grounds, in which all of us fully concur.

Petition denied.

*Kelly & Chinn*, for plaintiffs in error.

*N. Huber*, for defendant in error.

WILLIAMS, C. J. Plaintiffs in error, who were convicted in the court below of a riot, or unlawful assembly, in whipping one Miller, make a question here as to the correctness of the following instructions, given to the jury by the judge presiding at the trial:

" That if the defendants, or any of them, and others to the number of three or more, assembled with an intent to whip Miller, or have it done by the company, so many of the defendants as were there, consenting to it, were guilty." Objection is made to this exposition of the law, because it is too broad and general in its terms, and might involve the casual spectator of an affray in punishment with those perpetrating the crime. There seems to be no force in the

argument, for the question of intent was fairly submitted to the jury by the District Court; and the evidence must have satisfied them, that the persons convicted assembled not from curiosity, or by accident, but with the "intent" to do the unlawful act. Now, if plaintiffs in error, or any of them, assembled to whip Miller, or to have it done, they were guilty, though some other person may have inflicted the blows; for their object, at least, was to aid and abet in the commission of the offence.

Few riots occur in which all concerned do acts of violence, for, while some perform the work, others keep company to assist, if necessary, and by their presence deter opposition; thus directly co-operating in the consummation of the crime.

We see no danger to the innocent from the operation of the law, as laid down by the court below, for it would be impossible for one person to meet others under the circumstances, and with the *intent* specified in the instructions, and, at the same time, be innocent.

Several sections of the act under which plaintiffs in error were indicted, (*Statutes of Oregon, page* 204,) describe the duties and powers of peace officers in case of a riot; and it has been contended that a proclamation by such an officer to such an assemblage of persons to disperse, must be made before such assemblage would become unlawful or riotous.

Section first of the act provides, that "If any persons, to the number of three or more, whether armed or not, shall be unlawfully, riotously, or tumultuously assembled in any city, town or county, it shall be the duty of the mayor, sheriffs and constables," &c. Sections 234–5–6 consist of directions to these officers. Section seven provides, that "If any of the persons so unlawfully assembled shall demolish, destroy, &c., or do any other unlawful act, he shall," &c. Now, we think that section seven, in speaking of persons "so unlawfully assembled," refers to section one, which clearly contemplates the assemblage as "unlawful," before any steps by the conservators of the peace to disperse it. Surely it would subject the laws to very great and just reproach if its eyes were closed

to the outrageous deeds of a riot, because a peace officer was not present, or, if present, was not willing to command the rioters to disperse. Plaintiffs in error contend, that if the doing of an "unlawful act" by three or more persons, assembled for that purpose, will constitute a riot, then a company of gamblers would be guilty, for gambling is an unlawful act; but it is perfectly apparent from the whole statute, that the act indicated therein to be riotous must amount to a breach of the peace. Section seven, we think, should be taken as if it read, "Any other unlawful act against the peace," for the construction clearly comports with the spirit, and fully carries out the purposes of the act, which points exclusively, by its title, and all its provisions, to offences against the public peace.

                          · Judgment affirmed.