THE STATE OF OREGON, RESPONDENT, *v.* GEORGE DODSON, APPELLANT.

FORM OF INDICTMENT.—The form of indictment referred to, § 71 of the Criminal Code, is sufficient.

WHAT BILL OF EXCEPTIONS SHOULD SHOW.—A bill of exceptions should show that the same point presented in the appellate Court was raised in the Court below.

EVIDENCE OF THREATS.—In a trial for murder where the defense is justifia-

ble homicide, it is competent to prove the language and conduct of deceased towards defendant some days prior to the killing; the testimony showing that defendant was in fear of deceased at such time, and tending to show that he was in imminent peril of an attack from deceased at the time of the killing.

APPEAL from Union County.

The indictment charged the defendant "with the crime of murder, committed as follows: The said George Dodson, in the county aforesaid, on the 24th day of February, 1870, purposely and maliciously killed William Cochran by shooting him, the said William Cochran, with a pistol."

The defendant demurred on the ground that the facts stated do not constitute a crime; particularly specifying that the words "purposely and maliciously" state a conclusion and not facts; that the word "shooting" is not qualified by the words "purposely and maliciously," and that the words used in describing the offense are not equivalent to the words in the statute which define the offense. The demurrer was overruled, and the defendant, having excepted to the ruling, entered a plea of not guilty. Other grounds of error relied upon by the defendant are stated in the opinion of the Court. The defendant was convicted of murder in the second degree. A motion for a new trial having been overruled and judgment pronounced, he appeals to this Court.

*Bonham & Lawson,* for Appellant.

*W. B. Laswell, District Attorney, and J. W. Baldwin,* for Respondent.

By the Court, UPTON, J.:

The first point presented in this case is the sufficiency of the indictment. It literally conforms to the precedent published with the Code. Sec. 71 of the Criminal Code declares, in regard to "stating the acts constituting the crime," that the manner "as set forth in the appendix to this Code is sufficient." It is urged that the appendix is no part of the statute, and had no existence prior to the passage of the

statute; that this provision of § 71 should be disregarded; that the shooting, or firing the pistol, being one of the facts necessary to constitute the offense, and the principal act, should be charged in a direct manner; and that the shooting should be charged to have been done purposely and maliciously.

Many reasons against so indefinite a mode of pleading are pressed upon our attention. We do not think the practice can now be questioned on the ground of public policy, but think the doctrine *stare decisis* should prevail. Whatever consideration these objections might have deserved if they had been presented before the Act received judicial construction, the subject is not in the same position now. Inasmuch as the body of the Act and the appendix seem to have been considered by the Legislature as component parts of the same statute and were published together as such; and as the appendix has been for several years invariably treated by the Courts as a part of the statute; and the use of this form not being deemed subject to constitutional objection; either the departure from the prescribed mode, if there be any in the enactment, should be deemed an informality only, and not a substantial deviation from the requirements of the Constitution, or such forms as have grown into general use should be held to be sufficiently established by the practice of the Courts until the Legislature direct a change.

The indictment charged shooting with "a pistol;" the defendant objected to proof of shooting with a *revolver.* The objection was properly overruled. (Roscoe Cr. Ev., 649.)

It is shown by the bill of exceptions that the defendant had proved that about ten days before the homicide, the deceased had threatened to kill the defendant, and that the threats had been communicated to the defendant; that the deceased was a man of great physical strength, who "usually went armed," and "was a *desperado,*" and was "at the time of the shooting alleged in the indictment advancing on the defendant with the threat that he would beat the defendant to death;" and that on the said occasion,

ten days previous to the homicide, the defendant was obliged
to leave his place of business to evade an attack made by
the deceased.    The defendant offered to prove by one
Minor that on the occasion last mentioned, "the said de-
ceased broke open the door of the said business-house of
the said defendant and entered the same, saying, 'I will
get the damned rascal yet;' and when he had so entered said
place of business, the deceased then and there destroyed
the property of said defendant therein."    This evidence
was rejected and the defendant excepted.    The defendant
also offered to prove by James Wilson that one week before
the homicide the deceased threatened to kill the defend-
ant, the threats not being communicated to the defendant
before the homicide.    The evidence was rejected and the
defendant excepted.

It is not disclosed by the bill of exceptions whether the
testimony of Wilson was offered as circumstantial evidence
tending to prove the actual existence of imminent danger,
or whether it was offered solely for the purpose of showing
that the appearances were such as to lead a reasonable man
to believe that he was in imminent peril and that there was
no other mode of saving his own life.    In the latter case,
threats previously made and not communicated are not per-
tinent.    "Such threats without an overt act, when sought
to be introduced by a defendant in justification of a homi-
cide, must be shown to have been communicated to him."
(*Keener* v. *State*, 18 Geo. 149.)

We are not called upon to say that no case can arise
where previous threats not communicated would be received.
The question before us is, whether refusing to receive the
evidence in this case was error, and if that depends upon
the purpose for which it was offered the exception should
disclose the purpose or at least show that the same point
that is presented here was raised in the Circuit Court.
(*Dunning* v. *Rankin*, 19 Cal. 643.)    "Errors cannot be re-
lied on in the appellate Court, which are not taken advan-
tage of and raised at the trial."    (*Morgan* v. *Hugg*, 5 Cal.
409.)

Every intendment is in favor of a judgment of a Court of

record that has once acquired jurisdiction, and until the contrary be made clearly to appear, the appellate Court is bound to presume that the ruling is correct and founded upon sufficient reasons. It is possible that one of the grounds upon which the appellant now relies might have been obviated at the trial had it been stated. It is probable that the Court rejected the testimony of Wilson because the defendant claimed the right to use it to add weight to the evidence already given tending to excuse the act on the ground of *appearances* of imminent peril. If this was the avowed purpose, the Court was right in rejecting it, for to admit it solely for such an avowed purpose would tend to mislead the jury. (*Jackson* v. *Caldwell*, 1 Cow. 622; *Waters* v. *Gilbert*, 2 Cush. 27.)

We say this is the probable purpose, because it is argued by counsel in this Court that the defendant was entitled to it for the purpose last mentioned. We cannot therefore say from what is before us that the Court erred in rejecting the testimony of the witness Wilson. A part of the proposed testimony of the witness Minor was material, and there was a portion of it that the defendant was not entitled to introduce. If it was offered and claimed as a whole the objection to the evidence would be well taken. Had no motion for a new trial been made, and had the case been argued in this Court on the assumption that the defendant claimed to be equally entitled to each part of Minor's proposed testimony, I think this Court would be in duty bound to sustain the ruling of the Circuit Court. But it appears from the argument on behalf of the State, that it was held in the Circuit Court that neither proposition offered was admissible and in favor of a defendant in a criminal case, we may be justified in treating the two propositions as severally offered.

The latter statement to the effect that after the deceased had entered the premises of the defendant, the defendant having gone away, the deceased "destroyed the property of the defendant," was not a circumstance directly tending to show that he was seeking to make a personal attack on the defendant. Had the cross-examination sought to call out

such facts to *disprove* such intent, I can see no objection; but to allow a defendant to draw them out against the objection of the State would tend to indicate to the jury that a previous injury to the defendant's property in some way palliated or justified the killing.   Although so monstrous a doctrine would seem to carry its own refutation on its face, yet if a judge should deliberately permit a defendant to introduce such evidence after objection it would tend to create confusion in the minds of jurors,. and there is some danger that unprofessional and inexperienced men might through such means imbibe errors extremely prejudicial to the cause, to themselves and to the public.

But in relation to the threats which the witness Minor was called to prove, I think there can be no doubt of their admissibility.   It was already in proof that the defendant was put in fear of the deceased on that occasion, and had left his place of business to evade an attack by the deceased, and he must have been cognizant of the transaction. The evidence offered tended to show the acts and the manner of the deceased when he was in pursuit of the defendant, and to show what and how great cause there was for the fear which the defendant entertained.   It was in this respect evidence of the same class as evidence of threats previously communicated to the defendant.   It would therefore be material under the theory of defense that the defendant acted upon well-grounded apprehension that he was in such imminent danger that there was no other means of escape. And under the theory of defense, that the peril and necessity was real and actual, and that in fact the defendant was without fault, and was in such imminent danger from an attack then being made, that there was no way for him to escape great bodily harm but by slaying his assailant, this was competent as circumstantial evidence tending to show the motives and purposes of the deceased in making the present attack.   If it was competent to show the threat implied in the words, "I will get the rascal yet," it was competent to show the circumstances under which the words were used.   And as it appears from the record that this transaction had come to the knowledge of the defendant and

had put him in fear, and as part of the transaction was already before the jury, it was important, in order to a full understanding of the defense offered, that these circumstances should be admitted in evidence. (Whart. on Hom. 417; *Shorter* v. *People*, 2 Comst. 197.)

For the error in excluding this evidence, the judgment should be reversed and a new trial granted.