Argued September 20; affirmed November 3, 1944

STATE *v.* MERTEN ET AL.

(152 P. (2d) 942)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*Elton Watkins*, of Portland, for appellants.

*Fred A. Miller*, District Attorney, of Oregon City (Stanley J. Mitchell, Deputy District Attorney, of Oregon City, on the brief), for respondent.

ROSSMAN, J.

This is an appeal by the defendants, two in number, from a judgment of the circuit court which adjudged them guilty of the crime of murder in the first degree and ordered their execution. The entry of the judgment was preceded by a plea of not guilty and by the receipt of a verdict of guilty, unaccompanied with a recommendation for life imprisonment as permitted by Constitution of Oregon, Art. I, § 37, and § 23-411, O. C. L. A.

Both appellants submit the following assignment of error:

"Indictment is fatal on demurrer if the facts charged therein constitute more than one crime, or one crime in several forms."

In addition the appellant, Wilson, presents the following two assignments of error:

■ "It was error for the Court to pass upon the motion for a new trial,—that being the exclu-

sive province of the jury in criminal cases, particularly on the question of fact.''

█ ''Defendants' constitutional rights were violated by the Court and error made in refusing to grant a new trial; for in passing on the motion for new trial the Court necessarily determined question of fact; also the Court acted arbitrarily.''

Neither a transcript of the testimony nor a bill of exceptions is before us. The aforementioned contentions are, therefore, predicated upon the indictment, the motion for a new trial and the affidavits which were filed with the motion.

We shall now consider the first assignment of error. The charging part of the indictment states:

''The said Henry William Merten and Walter Higgins, on the 22nd day of July A. D., 1943, in the said County of Clackamas and State of Oregon, then and there being, were then and there engaged in the commission of the crime of Assault and Robbery Being Armed with a Dangerous Weapon, by unlawfully and feloniously while being armed with a dangerous weapon, to-wit: a pistol, committing an assault upon one R. N. Porter, with intent, if resisted, to kill or wound the said R. N. Porter, and did then and there unlawfully and feloniously take paper currency, and divers coins, money of the United States of America, the denominations, kinds and amounts of which are to the grand jury unknown, from the person of the said R. N. Porter, and against his will, and the said Henry William Merten and Walter Higgins, while engaged in the commission of such crime of Assault and Robbery Being Armed with a Dangerous Weapon, by their acts killed one Ralph Dahlen by shooting and fatally wounding him, the said Ralph Dahlen, with said pistol, said act of defendants being contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon.''

It later developed that the true name of the indictee, Higgins, is Walter Lorne Wilson.

Section 26-703, O. C. L. A., states:

"The indictment must contain:

(1)  *  *  *

(2)  A statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended."

Section 23-401 says:

"If any person shall purposely, and of deliberate and premeditated malice, or in the commission or attempt to commit any rape, arson, robbery, or burglary, kill another, such person shall be deemed guilty of murder in the first degree."

Section 23-428 thus defines the crime of Assault and Robbery While Armed with a Dangerous Weapon:

"If any person being armed with a dangerous weapon shall assault another with intent, if resisted, to kill or wound the person assaulted, and shall rob, steal, or take from the person assaulted any money or other property,  *  *  *  such person, upon conviction thereof, shall be punished  *  *  *  ."

According to § 26-705,

"The manner of stating the act constituting the crime, as set forth in the appendix to this chapter, is sufficient, in all cases where the forms there given are applicable, and in other cases forms may be used as nearly similar as the nature of the case will permit."

Forms No. 2 and No. 10, as they appear in the appendix, follow:

"No. 2. Murder in committing or attempting to commit rape, arson, robbery, or burglary

"Was engaged in the commission (or attempt to commit, as the case may be) of arson, by (stating it, as in an indictment therefor). And the said A B while engaged in the commission (or attempt to commit, as the case may be) of such arson, by his act killed C D, by (striking him with a club, or by other means, or means unknown to the grand jury, to be stated as in No. 1)."

"No. 10. Assault and robbery, being armed with a dangerous weapon

"Being armed with a dangerous weapon, did commit an assault upon one C D, with intent, if resisted, to kill or wound the said C D, and then and there feloniously took a gold watch (or as the case may be) from the person of the said C D, and against his will."

In *State v. Dodson,* 4 Or. 64, the use of the legislative forms in the drafting of indictments first received notice. The court said:

"Inasmuch as the body of the Act and the appendix seem to have been considered by the Legislature as component parts of the same statute and were published together as such; and as the appendix has been for several years invariably treated by the Courts as a part of the statutes; and the use of this form not being deemed subject to constitutional objection; either the departure from the prescribed mode, if there be any in the enactment, should be deemed as informality only, and not a substantial deviation from the requirements of the Constitution, or such forms as have grown into general use should be held to be sufficiently established by the practice of the Courts until the Legislature directs a change."

No change has been directed.

A comparison of the indictment previously quoted with the one set forth in *State v. Evans,* 109 Or. 503, 221 P. 822, shows that the two are counterparts in all

material items. The same attack was made upon that indictment as upon the one now before us. In sustaining the indictment, the decision, written by Mr. Justice HARRIS and bearing evidence of his characteristically careful workmanship, says:

> "Since it is apropos, we quote from the language of Mr. Justice Bean in State v. Morris, 83 Or. 429, 434 (163 Pac. 567, 569): 'The indictment complies substantially with the terms prescribed by the statute.' We hold that the indictment is not defective in either of the particulars mentioned by the defendant."

See, in accord with the decision just reviewed, 27 Am. Jur., Indictments and Information, § 53, p. 620, in which it is said that the courts encourage the use of forms devised by the legislature.

■■ Of course, the attacked indictment mentions a crime in addition to the one which it charges against the defendants. Section 23-401, however, authorizes that course to be taken in murder cases if the accused was attempting to commit the crime of "rape, arson, robbery or burglary" when he brought death to his victim. The statute, in fact, deems an attempt to commit any one of those four crimes, followed by the infliction of death, as the equivalent of "deliberate and premeditated malice." Hence, the attempt is an alternative to the element of malice in the crime of murder. And such being its nature, it must be alleged whenever the state proposes to prove the alternative. We are satisfied that the attacked indictment is not duplicitous and that it complies with all laws which govern the substance of a pleading. Since the defendant, Merten, did not join with his co-defendant in the motion for a new trial, the two remaining assignments of error do not pertain to him, and that being true, it necessarily

follows that the attacked judgment of conviction, so far as it applies to Merten, will be affirmed.

We come now to the second assignment of error. The motion for a new trial was made by the defendant Wilson only, and was based upon a claim that Wilson had newly discovered some evidence material to his defense.

The appellant, Wilson, cites and depends upon Article I, § 16, Constitution of Oregon, to support his contention that in this state a motion for a new trial is addressed to the jury. The material part of that section of our Constitution, as it appears in O. C. L. A., reads:

> "In all criminal cases whatever, the jury shall have the right to determine the law and the facts, under the direction of the court, as to the law, and the right of new trial, as in civil cases."

Although the appellant insists that the words just quoted demand that the jury, not the judge, pass upon a motion for a new trial, he does not explain how the jury could perform such a task if the motion were predicated upon contentions that the presiding judge had committed errors of law, such as, for instance, having erroneously instructed the jury.

The contention that the words just quoted demand that the jury, and not the presiding judge, shall pass upon a motion for a new trial has never before been presented to this court. Those words have been a part of our Constitution since the latter was written by the Constitutional Convention in 1857. In all of the succeeding years every one, judges, lawyers and legislators, have taken it for granted that in this state, as elsewhere, a motion for a new trial is addressed to the presiding judge.

We observe from Carey, A History of the Oregon Constitution, pages 310-316, that the part of section 16, above quoted, when originally placed before the Constitutional Convention, read as follows:

"In all criminal cases whatever the jury shall have the right to determine the law and facts."

According to Judge Carey's volume, that provision "elicited one of the most interesting, lengthy and animated discussions" that occurred before that body. A motion was made by Matthew P. Deady, president of the convention, while the convention was in committee of the whole to amend the section so as to make it read:

"In all trials by a jury the court shall decide the law and the jury finds the facts."

After the amendment, George H. Williams, an opponent of the proposition that "the jury shall have the right to determine the law and the facts," moved that there be added to it: "Nor shall a judge be allowed to instruct a jury or grant a new trial!" His purpose, according to A History of the Oregon Constitution, was "to make the farce complete." At that point another delegate, Frederick Waymire, evidently prompted a purpose similar to Williams', moved that the judges' salaries be not "more than $500 per annum" and explained that "if they were to do nothing he wanted them paid accordingly." Extensive debate occurred, in the course of which one of the delegates, John Kelsay, "wished to know how the judge would act if the jury gave a verdict contrary to the law and evidence? How could the judge interfere, if the jury were to be made the exclusive judges both of the law and the facts?" Later, in the course of additional discussion, Kelsay declared: "Story says: 'A court has no right

to set aside a verdict where the jury were the judges of the law and the facts." At the close of the debate a vote was taken upon the two proposed amendments (those of Williams and Waymire). Both were defeated. Then Delazon Smith, a delegate who favored granting to the jury power to determine both the law and the facts, offered the following amendment:

"The jury shall determine the law and the fact, under the direction of the court as to the law, and the right of new trial as in civil cases."

We followed the punctuation as it appears on page 314 of the volume just mentioned. The motion won. In the course of the debate no mention had been made of the subject of motions for new trials except so far as Kelsay's observations were concerned with that subject; the matter argued was whether or not in deliberating upon a verdict the jury should determine both the law and the facts. The foregoing concerns only action taken in the committee of the whole.

The journal of the Constitutional Convention states that the convention, on Friday, September 11, 1857, considered amendments emanating from the committee of the whole on the Bill of Rights. One of these, as recounted on page 59 of the journal is the following:

"Fifth Amendment—Section 19, by adding at the close of the section the words 'under the direction of the court as to the law, and the right of new trial as in civil cases.'"

The above punctuation is as it appears in the journal. The same page indicates that the vote on the amendment was favorable. Page 62 says:

"The article on bill of rights was ordered to be engrossed and read a third time on Saturday next."

According to page 70, a report was made Saturday afternoon that the article on the Bill of Rights had been truly engrossed, and thereupon the article was read a third time. Later in the afternoon "the question recurring upon the final passage of the article on bill of rights as read," the article was adopted. The delineation of these events terminates thus: "So the article on bill of rights was passed." Thus, Section 16 of Article I of our Bill of Rights assumed its present form.

The Constitution, as it appears at the end of the journal, thus punctuates Section 16 of Article I:

"In all criminal cases whatever, the jury shall have the right to determine the law and the facts, under the direction of the court, as to the law, and the right of new trial, as in civil cases."

The same sentence is thus punctuated in the original document that reposes in the archives of the Secretary of State:

"In all criminal cases whatever, the jury shall have the right to determine the law, and the facts under the direction of the court as to the law, and the right of new trial, as in civil cases."

It has been the practice in this state from the earliest of times for the judge, not the jury, to pass upon a motion for a new trial. We observe from our files that in 1846 in the days of the provisional government, one Richard McCary, petitioner for a writ of error entitled Richard McCary v. Oregon Territory, had been indicted "for selling and bartering ardent spirits." According to the decision, "in the Court below a motion was made in arrest of judgment, which motion was overruled by the Court." A motion for arrest of judgment is close kin to a motion for a new

trial. The decision, written by Judge Peter H. Burnett, held that "the Court below" erred in overruling the motion. The decision said:

> "If it be material to prove the fact that the offense was committed in any particular county, then it is material to allege it. The indictment is materially defective in having no venue. * * *"

It will be observed that the judge, not the jury, ruled upon the motion.

In *Thompson v. Backenstos,* 1 Or. 17, being the first decision rendered in the days of the territorial government, this court recognized that a motion for a new trial is addressed to the judge, not to the jury. The same was true in *Scott v. Cook,* 1 Or. 24. In *Cline v. Broy,* 1 Or. 89, the court said:

> "When a new trial will be productive of more injury than advantage to the party applying therefor, the court, in the exercise of a sound discretion, may refuse to grant such new trial; * * *."

In *Territory v. Latshaw,* 1 Or. 146, it is said:

> "The defendant now petitions in this court for a new trial, on affidavit of newly discovered evidence. The proceeding is founded upon the 6th section, page 247, of the Code. It authorizes the Supreme Court to 'grant a new trial for any cause for which by law a new trial may be granted.'"

*Latshaw v. Territory,* 1 Or. 140, says:

> "We think the evidence warrants the conclusion of the jury * * * , and the court below was correct in refusing to set the verdict aside."

*Hart & Blissett v. Territory,* 1 Or. 122, *Newby v. Territory,* 1 Or. 163, and *Baker v. Stoughton,* 1 Or. 227, involved motions for new trial. All of them are in accord with what has already been said.

*Bowen v. State,* 1 Or. 270, was the first decision upon a motion for a new trial after Oregon had achieved statehood. From that decision, we quote:

> "Several grounds of error are relied on by the counsel for the plaintiff to reverse the judgment, which we will consider separately. '1st. It is urged that the court below erred in overruling the motion for a new trial.' As to this point, it is sufficient to say, that it has been judicially decided, by the late Supreme Court of the territory of Oregon, that the overruling of a motion for new trial cannot be alleged as error.   *   *   *   *   The decision is based upon the peculiar phraseology of the statute of this State, which provides that every final judgment may be examined upon a writ of error, in the *same court* for error of *fact,* and in the Supreme Court for error in law; thereby leaving the consideration of errors of fact to the final determination of the Circuit Courts."

Thus, it is seen that from the earliest of times this jurisdiction held, in harmony with the universal practice, that a motion for new trial is addressed to the judge, not to the jury. That, of course, could be expected; but it is remarkable that decisions written as early as 1846, without the aid of law books, could set forth the law with such clarity and precision.

The decisions in the Thompson, Cline and Baker cases were written by Judge George H. Williams whom we have already mentioned. The decisions in the two Latshaw cases were written by Judge Matthew P. Deady. The author of the Newby decision was Judge Cyrus Olney. All three of these judges later served prominently as members of the Constitutional Convention. In all eight of the above cases, with the exception of *Cline v. Broy,* one or more of the participating attorneys later became members of the Constitutional assembly. Thus it appears that (1) before the Con-

stitutional Convention convened, this court had repeatedly deemed a motion for a new trial as addressed to the judge, not to the jury; and (2) that the convention was fully aware of that fact. We say that the convention knew the fact just stated because (1) the attorneys who argued the cases just mentioned sat in the Constitutional Convention as members thereof; and (2) the judges who wrote the decisions played distinguished roles in the deliberations of that body. Judge Deady was president of the convention; Judge Williams was chairman of its judiciary committee; Judge Olney was a member of the committee just mentioned; Reuben P. Boise, who presented to the court the Thompson and the two Latshaw cases, was another member of the judiciary committee.

The first legislative enactment upon the subject of new trial after the adoption of the Constitution was the 1862 Code of Civil Procedure, page 55; see also Deady's General Laws of Oregon, page 196. Two of the provisions of that enactment follow:

"The motion shall be heard and determined during the term, unless the Court continue the same for advisement, or want of time to hear it. * * *

"In all cases of motion for a new trial, the grounds thereof shall be plainly specified, and no cause of new trial not so stated shall be considered or regarded by the Court."

Of course, the above are plain indications that the motion is addressed to the judge, not to the jury. The three code commissioners who drafted that act included two men who were members of the Constitutional Convention, Judge Deady and Mr. J. K. Kelly. The latter had participated in the Newby case. Laws of 1864, Deady's Code, § 171, expressly made the above enactment applicable to criminal actions.

The 1911 legislative assembly amended the 1862 law by adding to the first of the above-quoted provisions: "said motion shall be heard and determined by the court within sixty days * * *."

We repeat, judges, lawyers and legislators have always deemed that in this state, as elsewhere, a motion for a new trial is addressed, not to the jury, but to the judge.

■ It is clear that neither a judge nor a jury ever passes upon "the right of new trial." The words just quoted are the ones which Delazon Smith's amendment introduced into Article I, Section 16, of our Bill of Rights. "The right of new trial" is an implement of justice which is beyond the power of any individual judge or jury to alter, grant or withhold. It is never the subject of courtroom trial. The right of new trial is similar to the right to bail, to trial by jury, to freedom of speech, and so forth. The right to grant a new trial is inherent in all courts, unless withheld by lawful enactment. *Kearney v. Snodgrass,* 12 Or. 311, 7 P. 309, is an excellent exposition of the subject. The judges of three centuries ago, when the jury consisted of the witnesses, reached out and devised this right as a means of thwarting arbitrary verdicts. Attaint had failed its purpose. One of the decisions that was a vanguard in the establishment of the right is Anonymous, 1 Keb. 864. In it the court ordered "the sheriff should retorn a good jury in the new trial." The decision by Chief Justice Hyde explains:

"Juries ought to be fined if they would go against the hare and direction, take bit in mouth and go headstrong against the Court; and said, that by the grace of God he would have it tried, seeing the attaint is now fruitless."

That which is passed upon in the courtroom is not "the right of new trial" but a motion for a new trial. The difference is not one of mere nomenclature.

The words we are now construing are found in our Bill of Rights where clarity of expression normally is present. Moreover, the quoted words were chosen by a delegate to the Constitutional Convention who was a lawyer and a master of the English language. Had his purpose been to provide that the jury, and not the judge, should pass upon a motion for a new trial, seemingly, he would have said so. But the provision which he wrote concerned "the right of new trial."

■ It seems desirable, in construing the words before us, to revert to the conditions present when the Constitutional Convention was under way. In 1850, in *Baltimore and Susquehanna Railroad Co. v. Nesbit*, 51 U. S. 395, 13 L. Ed. 469, the Federal Supreme Court said:

> "If it were necessary to sustain by precedent the authority or practice of the state legislature in awarding a new trial, or in ordering a proceeding in the nature of an appeal, after litigation actually commenced, or even after judgment, and as to which provision for new trial or appeal had not been previously made, a very striking example from this court might be adduced in the case of Calder and Wife v. Bull and Wife, decided as long since as 1798, and reported in the 3rd of Dallas, p. 386."

In *Wheeler's Appeal*, 45 Conn. 306, the court sustained the validity of the following legislative enactment:

> "Resolved by this Assembly that appeals may be taken from the doings of the commissioners upon the estate of George B. Wheeler, late of Milford,

deceased, at any time within twenty-one days from the rising of the General Assembly.''

In holding that enactment valid, the court said:

"Our colonial records show that one very large branch of legislative business was the hearing and granting of new trials."

From 12 C. J., Constitutional Law, § 308, p. 831, we quote:

"The colonial legislatures frequently exercised the power of granting new trials in adjudicated causes, and there is nothing in the federal constitution to forbid the exercise of this power by the state legislature."

The same volume, § 587, page 985, says:

"In the leading case of Calder v. Bull, decided in 1798, it was held by the United States supreme court that a state statute setting aside a final judgment of a court and granting a new hearing was not void as in contravention of any provision of the United States constitution, * * *. In several other jurisdictions also it has been held in cases which, with a single exception, were decided before the adoption of the fourteenth amendment that it is within the power of the legislature to extend the time for an appeal after such right has been barred by lapse of time under existing law."

See also 166 C. J. S., Constitutional Law, § 128, page 320, and § 272, page 691.

From the foregoing we see that in 1857 when our Constitution was written it had not yet been established that the grant of a new trial was solely within the province of the courts. To the contrary, the highest court in the land had twice, over a span of a half century of time upheld legislative grants of new trials.

Although, as we have seen, members of the Constitutional Convention had firsthand knowledge that

Oregon judges had held that they possessed the power to grant new trials and had frequently exercised the power, no criticism was voiced of any of the decisions. To the contrary, one of the members who favored the proposal that in criminal cases the jury should determine both the law and the facts, in arguing against Judge Deady's motion which sought to make it the province of the court to decide the law, declared:

> "It was the business of the judge to preside over the trial, listen to the facts, and, if the jury do not render a verdict in accordance with the law and the facts, to grant a new trial."

Further, Judge Williams' proposition, "nor shall a judge be allowed to instruct a jury or grant a new trial", which was offered for farcical purposes, found no support among the proponents of the doctrine of jury supremacy.

It seems clear that Mr. Smith's motion was not intended to change the existing practice. His amendment was offered only after Mr. Kelsay had twice pointed out that a court would be helpless to rule upon a motion for a new trial if the jurors were the judges of the law and the facts. It was at that point that Smith introduced his amendment which sought to alter the existing clause and which read as follows:

> "In all criminal cases whatever the jury shall have the right to determine the law and the facts."

His amendment added after the words "the facts" the following:

> "Under the direction of the court as to the law, and the right of new trial as in civil cases."

To us, it seems that Smith had two purposes. His first was to meet Kelsay's objection that a judge would

be helpless to rule upon a motion for a new trial if the jury were the judges of both the law and the facts. In order to overcome that objection, he added the modifying clause, "under the direction of the court as to the law." Next, in order to avoid any chance that the provision, "In all criminal cases whatever the jury shall have the right to determine the law and the facts" might destroy the right of new trial, he added a positive guarantee of the right of new trial. The peculiar phraseology which he employed, to-wit: "and the right of new trial as in civil cases", is readily understandable. There is no provision in our Constitution which confers upon a jury in civil cases the power to determine both law and facts. Therefore, since Smith evidently wished that the right of new trial, which he proposed to guarantee, should be a complete one, he employed the phrase, "the right of new trial as in civil cases." Manifestly, his purpose was not to make it possible for future legislative assemblies to assign to juries motions for new trials filed in criminal cases, but to make the right of new trial in criminal actions as complete as in civil cases. Evidently he was satisfied with the interpretation which the decisions aforementioned had placed upon the right of new trial.

■ The foregoing is what we believe the delegates had in mind when they employed the language under consideration. We think that they intended (1) to subject the jury's determination of the law to "the direction of the court," and (2) to guarantee a "right of new trial" coextensive with its use in civil cases. To ascribe to the contested language the meaning suggested by the appellant, Wilson, and thus assign a motion for a new trial to the determination of the jury,

would do no credit to the eminent lawyers whose names we have mentioned. One of them later became the Attorney General of the United States; another distinguished himself over a period of thirty years as a Federal judge; a third served in Congress and as a minister to a South American republic. Clearly, they had no thought of putting into our Constitution a provision calling upon juries to pass upon motions for new trials—especially not, when no delegate uttered a single word indicating such a purpose.

■ The construction just announced is strongly fortified by an interpretation in harmony therewith which has been placed upon those words for four scores of years by all who have been concerned with Article I, Section 16. We now quote from Cooley's Constitutional Limitations, 8th ed., page 144:

> "But where there has been a practical construction which has been acquiesced in for a considerable period, considerations in favor of adhering to this construction sometimes present themselves to the courts with a plausibility and force which it is not easy to resist. Indeed, where a particular construction has been generally accepted as correct, and especially when this has occurred contemporaneously with the adoption of the constitution, and by those who had opportunity to understand the intention of the instrument, it is not to be denied that a strong presumption exists that the construction rightly interprets the intention. And where this has been given by officers in the discharge of their official duty, and rights have accrued in reliance upon it, which would be divested by a decision that the construction was erroneous, the argument *ab inconvenienti* is sometimes allowed to have very great weight."

The same principle was enunciated and applied in *Jory v. Martin,* 153 Or. 278, 56 P. (2d) 1193. In that decision, Mr. Justice RAND said:

"The object of construction, as applied to a written constitution, is to give effect to the intention of the people in adopting it and, when any particular provision of the constitution has received a practical construction for a period of 76 years by each of the three great departments of the state and such construction has been acquiesced in by the people for that whole period, the court should not apply a different construction to that provision unless its unconstitutionality is established beyond all reasonable doubt."

As we have seen, the president of the Constitutional Convention and another of its influential members, shortly after statehood was achieved, became two of the three members of the code commission which drafted the Code of Civil Procedure of 1862. That compilation contains a chapter which regulates the grant of new trials. One of the chapter's provisions expressly recognizes that the judge, not the jury, rules upon motions for new trials. The next legislative assembly made that act applicable to criminal actions. Since then the act has been twice amended, but the amendments have retained the provision which recognizes that it is the province of the judge to grant or deny a new trial. Thus, our legislature has constantly construed the above-quoted section of our Bill of Rights as meaning that the judge, not the jury, rules upon applications for new trials.

It is wholly needless to set forth in this opinion a citation to the scores, yes hundreds, of decisions of this court which recognize that it is the province of the judge, and only of the judge, to rule upon a motion for a new trial. No member of the bar has ever criti-

cized that point of view, and no view to the contrary has ever entered the mind of a member of this court. Thus, for almost a century of time all have acquiesced in an interpretation of Article I, section 16, Oregon Constitution, that it is the judge, and not the jury, who rules upon a motion for a new trial.

The foregoing is our construction of Article I, section 16, Constitution of Oregon. We hold that the second assignment of error is without merit.

The motion for a new trial was accompanied by the following two affidavits:

"I, Henry W. Merten, depose and say that on the night of July 22, 1943, when Wherry's Tavern was held up the man with me was not Walter Higgins whose true name is Walter Lorne Wilson but another person known to me as Blackie whose description was that given by witnesses called by the State in the trial—that is to say he was about 5′ 11″ in height, dark mustache, side whiskers, wavy hair, Southern tone of voice and thirty-five years of age and a swagger walk. That I am willing to testify to the foregoing at any time."

"I, Walter Lorne Wilson, being first duly sworn, state that I was not with Henry W. Merten at Wherry's Tavern July 22, 1943, and had nothing to do with the robbery thereof nor did I have anything to do with the shooting of Ralph Dahlen; that I have not been able to learn that said Merten would state who was there until this date when his signed statement was shown to me; that I am not guilty of the crime for which I was convicted; that I could not produce the facts now disclosed by Merten until and unless he voluntarily took the stand and testified to the truth. I now ask for a new trial."

As we have said, the appellants have submitted neither a transcript of the evidence nor a bill of exceptions. Hence, we know nothing about the facts con-

cerning the death of Ralph Dahlen, the victim mentioned in this indictment. There is nothing before us from which we can determine whether the proffered testimony of Merten would be material to any issue which was developed during the course of the trial. We know nothing about Wherry's Tavern nor whether the robbery of that place had any bearing upon the crime alleged in the indictment. It may be that the robbery of Wherry's Tavern was wholly disconnected from the killing of Ralph Dahlen, the purported victim of the homicide. Further, it will be observed that, although Merten says in his affidavit that "when Wherry's was held up the man with me was not * * * ", he does not say that he, Merten, was in the tavern at that time. It may be that he and his companion were in some distant city at the time of the robbery.

■ A motion for a new trial, based upon a claim of evidence newly discovered, is viewed with distrust. One who files such a motion assumes the burden of showing, not only that he has discovered new evidence, but also that the newly discovered evidence is material to the issues in the case.

■ We know of no reason for believing that any error was committed when the motion for a new trial was denied.

The foregoing disposes of the three assignments of error. We find no merit in any of them. We have not mentioned every authority cited in the appellants' brief, but all of them have received careful consideration.

The judgment of the circuit court is affirmed.