Argued September 11, affirmed September 25, 1957

# MONAGHAN *v.* SCHOOL DISTRICT No. 1, CLACKAMAS COUNTY

### 315 P. 2d 797

*Gerald J. Meindl* argued the cause for appellant. With him on the brief were Meindl, Mize & Kriesien, Portland.

*E. W. Kirkpatrick,* Milwaukie, argued the cause and filed a brief for respondent.

WARNER, J.

This is an appeal from a judgment rendered in a proceeding brought under Chapter 27, ORS (ORS 27.010 to 27.030, inclusive). These sections of the code provide for the determination of questions in controversy without action or suit.

The plaintiff, Thomas Monaghan, is a duly elected, qualified and acting member of the House of Representatives of the 49th Legislative Assembly of the State of Oregon. He is also a teacher in the public schools of School District No. 1 of Clackamas County, Oregon, under contract executed on April 5, 1957, by and between himself and the defendant, school board of that district.

The controversy projected by the statement filed under Chapter 27, ORS, supra, seeks to determine whether or not Monaghan is eligible for employment as a teacher in the public schools of this state while he holds a position as a member of the House of Representatives. The school district contends that he is not. It relies upon the provisions of Art III, § 1 and Art II, § 10 of the Oregon Constitution.

The plaintiff's position is: That notwithstanding the foregoing provisions of the Constitution, he is eligible to perform his function as a teacher under his contract with the district and without the necessity of resigning his seat in the state legislature.

From a decision of the circuit court adverse to the plaintiff, he brings this appeal.

There is no issue of fact presented. Our sole duty in the premises is to resolve the dispute in terms of the applicability of one or both of the constitutional provisions relied upon by the school district.

■ We are inhibited from passing upon Mr. Monaghan's qualifications as a member of the legislature. That power reposes exclusively in the branch of the legislative assembly to which he was elected to serve. (Oregon Constitution, Art IV, § 2) *Lessard v. Snell,* 155 Or 293, 295, 63 P2d 893. We, therefore, address ourselves only to the question of plaintiff's qualifications

to act as a school teacher while continuing as a member of the legislature.

We first give attention to the provisions of Art III, § 1 which deals with the separation of powers of the three major departments of government. It reads:

> "The powers of the Government shall be divided into three seperate [sic] departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

It is an exact counterpart of Art III, § 1 of the 1851 Constitution of the State of Indiana from whence it was taken. Carey, A History of the Oregon Constitution, p 470.

The foregoing section, designed to insure separation of powers in government, is one of paramount purpose in the system of the political philosophy peculiar to our federal and state governments. All state constitutions, except one or two, contain provisions of similar import and objective.

To discover why the forefathers wrote a provision of this character into the federal constitution and, indeed, why provisions of the same tenor are in most every state constitution, we turn to 1 Hamilton or Madison, The Federalist (No. 51), pp 353, 354, from whence we quote:

> "In order to lay a due foundation for that separate and distinct exercise of the different powers of government, which to a certain extent is admitted on all hands to be essential to the preservation of liberty, it is evident that each department should have a will of its own, and consequently should be so constituted that the members of each should

have *as little agency as possible* in the appointment of the members of the others. * * *

"It is equally evident that the members of each department should be *as little dependent as possible* on those of the others, for the emoluments annexed to their offices. Were the executive magistrate, or the judges, not independent of the Legislature in this particular, their independence in every other would be merely nominal." (Emphasis supplied.)

For a judicial statement of high excellence and of more recent date stressing the importance of the maintenance of this departmental separation, we turn to *O'Donoghue v. United States* (1933), 289 US 516, 53 S Ct 740, 77 L ed 1356, where, at p 1360, Mr. Justice Sutherland, speaking for the court, says:

"The Constitution, in distributing the powers of government, creates three distinct and separate departments—the legislative, the executive, and the judicial. This separation is not merely a matter of convenience or of governmental mechanism. Its object is basic and vital, * * * namely, to preclude a commingling of these essential different powers of government in the same hands. * * *

"If it be important thus to separate the several departments of government and restrict them to the exercise of their appointed powers, it follows, as a logical corollary, equally important, that each department should be kept completely independent of the others—independent not in the sense that they shall not co-operate to the common end of carrying into effect the purposes of the Constitution, *but in the sense that the acts of each shall never be controlled by, or subjected, directly or indirectly, to, the coercive influence of either of the other departments.* James Wilson, one of the framers of the Constitution and a justice of this court, in one of his law lectures said that the independence of each department required that its proceedings *'should be free from the remotest influence, direct*

*or indirect, of either of the other two powers.'* 1 Andrews, Works of James Wilson (1896) p. 367. And the importance of such independence was similarly recognized by Mr. Justice Story when he said that in reference to each other, neither of the departments *'ought to possess, directly or indirectly, an overruling influence in the administration of their respective powers.'"* (Emphasis supplied.)

The position taken by the appellant would have us accord to the word "functions" in Art III, § 1 the same meaning to be derived from the phrase "official duties," thus, in legal effect, making them synonymous. If this were true, it would apply only to those exercising official duties in more than one department of government. As a corollary, appellant asserts that Art III, § 1 has no application to employees as distinguished from officers of the several departments.

Appellant's support for this is found in the dissenting opinion to *State ex rel Black v. Burch* (1948), 226 Ind 445, 80 NE2d 294. This dissent implies that the use of "functions" in Art III, § 1 of the Indiana Constitution of 1851 was resorted to as a substitute in that section merely to avoid redundancy which would be consequent upon the insertion of the phrase "official duties" in place of the word "functions" as we there find it. *State v. Burch,* supra (80 NE2d 561). Thus, the dissenting opinion in the Burch case is made to fit the pattern of appellant's argument here, that is, that "official duties" and "functions" are alike in their meaning.

We are, however, constrained by rules of construction which make it impossible to follow the course suggested by the appellant.

■ In construing the organic law, the presumption and legal intendment are that every word, clause and

sentence therein have been inserted for some useful purpose. *School District 1, Multnomah County v. Bingham* (1955), 204 Or 601, 611, 283 P2d 670, 284 P2d 779.

When so engaged, the object is to give effect to the intent of the people adopting it. But this intent is to be found in the instrument itself. It is to be presumed that the language which has been employed is sufficiently precise to convey the intent of the framers of the instrument. To find the thought a given section expresses, the first resort in all cases is to the natural signification of the words used in the order of the grammatical arrangement in which they have been placed. If thus regarded the words embody a definite meaning, involving no absurdity and no contradiction between different parts of the section construed and that meaning apparent on its face is the very one we are at liberty to say was intended to be conveyed. In such a case, there is no room for construction. Where one meaning is plainly declared in the instrument, the courts are not at liberty to search elsewhere for possible or even probable meanings. *Schubel v. Olcott,* 60 Or 503, 512, 120 P 375; 1 Cooley's Constitutional Limitations (8th ed) p 124; 16 CJS 81, Constitutional Law § 19.

The constitution derives its force and effect from the people who ratified it and not from the proceedings of the convention where it was framed, yet we are permitted to consider some of the circumstances, conditions and personalities present at that time as a source of help but not as a matter necessarily conclusive upon our own judgment. See *Jory v. Martin,* 153 Or 278, 56 P2d 1093; *State v. Merten,* 175 Or 254, 152 P2d 942.

We have already observed that Art III, § 1 of our constitution, as framed by the Constitutional Convention of this state, held in 1857, is copied verbatim from

a like provision of the Constitution of Indiana, as framed by its Constitutional Convention of 1851. So, too, were many other sections of the instrument. Carey, A History of the Oregon Constitution, p 469.

It is interesting to note that when the article of the Indiana Constitution was first reported in its original form by the committee on miscellaneous provisions on January 21, 1851, the word "power" was contained therein instead of the word "functions," but was referred back for rephrasing and was finally adopted in its present form. Constitution Convention Journal 1850 (Indiana) p 732. Also see *State v. Burch,* supra (80 NE2d 302 and 561). Art III, § 1 of the Indiana Constitution of 1851 still prevails.

Many of those who sat in the Oregon Convention were regarded as among the ablest lawyers of this state and exercised an active and effective leadership in its deliberations. Judge Deady, who presided, had for many years served as United States District Judge for Oregon, while Judge Williams was then a member of the Territorial Supreme Court and later served as Attorney General of the United States under President Grant. R. P. Boise, P. P. Prim, John Kelsay, E. D. Shattuck and James K. Kelly in after years served as members of this court. It is difficult to believe that the convention with the leadership and help of men of their professional stature ever suffered the word "functions" to remain in the section soley to avoid redundancy by its use at that point instead of "official duties," or that they regarded the two words as synonymous. They were not children in the field of the proper meaning and use of words. It may also be safely assumed, had they desired a result such as appellant urges us to adopt, they would have reframed the phrases of this section more simply and directly

to accomplish that intent. While the Indiana Constitution of 1851 seemed to offer the controlling pattern for the majority of the provisions adopted by the Oregon Convention, it did not blindly read them into our organic law. The convention did not hesitate to depart from the wording of the Indiana instrument when it deemed a modified construction better suited to the purposes of the state. See Carey, A History of the Oregon Constitution, supra, at p 469. There is no record which justifies the statement that the Oregon Convention had any part of the record of the proceedings of the Indiana Convention before it when it convened, yet it is not a far-fetched speculation to say that because of the relative closeness of the two conventions in point of time and the dependence of the Oregon Convention upon the Indiana Constitution in its labors that the convention might well have had as a further guide a record of the convention proceedings in the latter state, inasmuch as the official "Report of Debates and Proceedings of the Convention" was in print at that time. If they did, they knew what took place there in framing what was copied in Oregon as Art III, § 1. It is not difficult to impute that species of thoroughness to some of the able men above named. Unfortunately, there exists no record or journal of the day-to-day proceedings of the Oregon Convention to tell us precisely what was done during its deliberations on the acceptance of Art III, § 1.

██ It is, of course, apparent that Mr. Monaghan, as a member of the legislature, is a "person charged with official duties" in the legislative department of government. But is he, as a teacher, exercising "any of the functions" of another department?

It is not difficult to define the word "official duties." As a general rule, and as we think the phrase

is used in the section of the constitution, they are the duties or obligations imposed by law on a public officer. 67 CJS 396, Officers, § 110; 28 CJS 597, Duty. There can be no doubt that Mr. Monaghan, as a legislator, is "charged with official duties." But the exercise of the "functions" of a department of government gives to the word "functions" a broader sweep and more comprehensive meaning than "official duties." It contemplates a wider range of the exercise of functions including and beyond those which may be comprehended in the "official duties" of any one officer.

It may appear to some as a construction of extreme precaution, but we think that it expresses the considered judgment and deliberation of the Oregon Convention to give greater force to the concepts of separation by thus barring any official in one department of government of the opportunity to serve any other department, even as an employee. Thus, to use the language of *O'Donoghue v. United States,* supra, in a sense, his roll as a teacher subjugates the department of his employment to the possibility of being "controlled by, or subjected, *directly or indirectly,* to the coercive influence of" the other department wherein he has official duties and vice versa. (Emphasis supplied.) In the Burch case, supra (80 NE2d 302), when considering the word "functions" in its similar setting in the Indiana Constitution, the court observed that the term "functions" denotes a broader field of activities than the word "power."

"Functions" as used in Art III, § 1 has seldom been accorded a judicial definition and much less when applied to the employment of one engaged in governmental activity. We find, however, in *State v. Burch,* supra, the court citing with approval the following definition of "functions" from *People v. Salomon*

(1914), 212 NY 446, 106 NE 111, which we, in turn, adopt as applicable in the instant matter. The definition of the New York court is stated as follows:

> ' "Function" is defined by the Century Dictionary as "that which one is bound or which it is one's business to do; business; duty; employment." * * *'

One who performs "official duties" necessarily functions in tasks relating to his office, but one who exercises the functions of another department is not necessarily engaged in the performance of "official duties."

In Oregon it is recognized that stenographers and clerks by their service to a government official are said to be exercising the functions of a department of government. This conclusion is made apparent in *Gibson v. Kay,* 68 Or 589, 597, 137 P 864, where Mr. Justice BURNETT makes this statement:

> "* * * It is said in Article III, Section 1, of the state Constitution that the powers of the government shall be divided into three separate departments, the legislative, executive, including the administrative, and the judicial; and no person charged with official duties in one of these departments shall exercise any of the functions of another, except as in this Constitution expressly provided. In any view of the case the functions of the corporation commissioner and his assistants, including stenographers and clerks, pertain to the administrative department of the government in which a member of the legislative department is forbidden to participate."

What we have heretofore said is directly in line with the holding of the Indiana Supreme Court in *State v. Burch,* supra, wherein it construed that section of the Indiana Constitution which is the genesis for the identical provision of our organic law. In the

Burch case, decided in 1948, four appeals were consolidated. All involved an interpretation of the section of the constitution which we are here construing. All of the four appellants were members of the legislature, as is the appellant Monaghan here. All had been elected in 1944. During their terms of office, one was appointed Secretary of the Indiana Flood Control and Water Resources Commission; one was appointed director of the motor vehicle department by the Public Service Commission; the Highway Commission appointed another as superintendent of maintenance; and the fourth was designated as a barber inspector by the State Board of Barber Examiners.

The court noted that "their jobs * * * are not public offices, nor do they in their respective positions, perform any official functions in carrying out their duties in these respective jobs; they were acting merely as employees of the respective commission or boards by whom they were hired." (80 NE2d, supra, at p 299)

The Indiana court concluded the Burch case by holding at page 302:

"In view of the fact that it is obvious that the purpose of all these separation of powers provisions of Federal and State Constitutions is to rid each of the separate departments of government from any control or influence by either of the other departments, and that this object can be obtained only if § 1 of Art. 3 of the Indiana Constitution is read exactly as it is written, we are constrained to follow the New York and Louisiana cases above cited. If persons charged with official duties in one department may be employed to perform duties, official or otherwise, in another department the door is opened to influence and control by the employing department. We also think that these two cases are logical in holding that an employee of an officer, even though he be performing a duty not involving

the exercise of sovereignty, may be and is, executing one of the functions of that public office, and this applies to the cases before us."

The cases referred to in the foregoing statement were *People v. Salomon,* supra (106 NE 111), and *Saint v. Allen* (1930), 169 La 1046, 126 S 548.

We pause to observe that we have examined the constitution of every state in the union having a clause designed to effectuate a separation of the three great divisions of government, and find that none are like Art III, § 1 of the Oregon Constitution except that of Indiana. A few might be said to be merely alike in the content suggested by the appellant, but we find no adjudications from those states which can give comfort or support to the appellant's contentions here.

Our conclusion is that the word "functions" embodies a definite meaning with no contradiction of the phrase "official duties," that is, he who exercises the functions of another department of government may be either an official or an employee.

Is Mr. Monaghan, charged with official duties as a legislator, in his employment as a school teacher, exercising the functions of another department of government? We think he is and for the reasons which follow.

 Education is a function or duty not regarded as a local matter. It is a governmental obligation of the state. Few of our administrative agencies are creatures of the organic law. But, as to schools, the constitution mandates the legislature to provide by law "for the establishment of a uniform, and general system of Common schools." Oregon Constitution, Art VIII, § 3; 47 Am Jur 299, Schools § 6. It is a sovereign power and cannot be bartered away. *Campbell v. Aldrich,* 159 Or 208, 219, 79 P2d 257. The power ascribed to

the legislature under the constitution carries with it plenary power to establish the unit of the system, denominated a school district. *Harris v. Burr,* 32 Or 348, 367, 52 P 17.

■ A school district, as a legislatively created entity, enjoys closer proximation to the state than to the community it serves. It is a civil division of the state and has been referred to as a corporation having the most limited powers known to the law. It is a quasi-municipal corporation separate and distinct from pure municipal corporations such as cities and towns. *Lovell v. School District No. 13, Coos County,* 172 Or 500, 507, 143 P2d 236; *Antin v. Union High School District No. 2 of Clatsop County,* 130 Or 461, 464, 280 P 664; *School District No. 17 of Sherman County v. Powell,* 203 Or 168, 185, 279 P2d 492; 47 Am Jur 305, Schools § 12.

■. When it so acts, it acts wholly as a governmental agency when performing duties imposed by statute. *Spencer v. School District No. 1,* 121 Or 511, 518, 254 P 357; *Antin v. Union High School,* supra (130 Or 470); 66 ALR 1271.

A public school teacher is an employee, employed in a public capacity. *Alexander v. School District No. 1,* 84 Or 172, 174, 164 P 711; 78 CJS 971, Schools and School Districts § 154; 47 Am Jur 372, Schools § 108. Teachers are employees hired by a state agency whose function it is to serve the state in the exercise of its sovereign power and duty as mandated by Art VIII, § 3 of the Oregon Constitution.

Recently, the Supreme Court of the United States has said: "Today, education is perhaps the most important function of State and local governments." *Brown v. Board of Education of Topeka* (1954), 347 US 483, 493, 74 S Ct 686, 691, 98 L ed 873, 880. It is a

declaration to which we unhesitatingly subscribe. This judicially-emphasized importance of the place of education in our system of government casts upon us the duty to resolve doubts, if any, about the possibility of incursions of one department of government into the area occupied by education as an administrative function of the executive department in favor of a decisive separation of these powers and with jealous vigilance bar its coercive influence or exercise, directly or indirectly, when that possibility becomes evident.

In the fulfillment of the obligation which our constitution imposes (Art VIII, § 3, supra) the teacher is the most effective factor in its implementation.

A teacher's position in the scale of the relative importance of state employees serving a department of government is greater than most all others, particularly when compared to the stenographers and clerks mentioned in *Gibson v. Kay,* supra.

The eminence of the teacher's place as a functionary in our system of government is emphasized and dignified by several statutes applying exclusively to them as a class: See ORS 342.580 (3) relating to their general duties, and ORS 342.615 creating an obligation to take an oath before entering upon the performance of their work.

This court has on several occasions held that when statutory employment requires subscribing to an oath as a condition of that employment, the oath taking is a test in determining whether the one who does so is an employee or an officer. *David v. Portland Water Committee,* 14 Or 98, 12 P 174; *Albee v. Weinberger,* 69 Or 331, 338, 138 P 859. We do not deem it appropriate to utilize that test in the instant matter, but do hold that the oath required of a teacher is a factor of significance which elevates a teacher's

employed status far above that of many lesser state employees. It places the position occupied in close proximation to that of an official of the state, thereby exalting a teachership in terms of professional importance, public respect and legislatively recognized effectiveness. We also observe that the uninterrupted continuity of the work of a teacher is deemed so desirable that the legislature made no specific provision for leaves of absence during the school term except for sick leave. ORS 342.595.

■ It is through the teacher, not the school district, that the state's standards of educational excellence are disseminated. When so engaged, they are exercising one of the functions of the executive department of our state government.

There is no suggestion made here that Mr. Monaghan has by reason of his dual positions as legislator and a teacher, used either to the detriment of either department of government, the legislative or executive, nor do we impute to him any unworthy motive in his desire to retain both places at the same time. Our concern is not with what has been done but rather with what might be done, directly or indirectly, if one person is permitted to serve two different departments at the same time. The constitutional prohibition is designed to avoid the opportunities for abuse arising out of such dual service whether it exists or not. Judge Holman, who heard this matter in the circuit court, in his opinion employed a cogent illustration of the possibility of the coercive opportunities which might arise if a school teacher was permitted to act as a legislator during the term of his employment in the school system:

"* * * Conceivably the school board could say to its employee who is serving in the legislature, 'You must vote in favor of certain bills that are ad-

vantageous to us and which increase our authority. If you do we will increase your salary and if you do not you will be penalized in your position in certain respects.' Would this relationship not then tend to concentrate power in the branch of the government by which the member of the legislature was employed and to the detriment of the legislative branch? * * *."

We limit our opinion to the status of a teacher in our public school system in the relation of such person to the bans imposed by Art III, § 1 of the Constitution and defer judgment as to its impact upon other classes of employment by a school district or upon employees of any other administrative unit of state government until it becomes necessary to do so in subsequent litigation.

As previously indicated, the respondent places some reliance upon Art II, § 10 of the Constitution, which inhibits any person from holding "more than one lucrative office at the same time." Inasmuch as Monaghan's position as a teacher is not an office, Art II, § 10 can have no applicability.

In emphasis of the importance and need of vigilance to avoid the trespass of one of the major departments of government upon the domains so wisely reserved to the other two, we conclude with the words of Madison, taken from 1 The Federalist, p 340:

"It is equally evident that, in reference to each other, neither of them ought to possess, *directly or indirectly,* an overruling influence in the administration of their respective powers. It will not be denied that power is of an encroaching nature, and that it ought to be effectually restrained from passing the limits assigned to it." (Emphasis supplied.)

Affirmed. Costs to neither party.

BRAND, J., dissents.