Argued November 9, affirmed November 23, 1960

# STATE OF OREGON *v.* HOOD
356 P. 2d 1100

*Glenn D. Ramirez*, Klamath Falls, argued the cause

for appellant. With him on the brief was Hal F. Coe, Klamath Falls.

*Max L. McMillin*, Deputy District Attorney, Klamath County, Klamath Falls, argued the cause for respondent. On the brief were O. W. Goakey, Dale T. Crabtree, District Attorney, Klamath County, and Robert M. Redding, Deputy District Attorney, Klamath Falls.

Before ROSSMAN, J., presiding, and PERRY, GOODWIN and HOWELL, Justices.

ROSSMAN, J.

This is an appeal by the defendant Charles Junior Hood from a judgment of the circuit court which adjudged him guilty of the crime of assault with a dangerous weapon. The judgment was based upon the verdict of a jury. The indictment charged this defendant and a co-indictee by the name of Louis Gibbons with:

> "* * * then and there acting together, and then and there being armed with a dangerous weapon, to-wit, a stove poker, did then and there wilfully, unlawfully and feloniously assault one Cyril Bierle by then and there striking and beating the said Cyril Bierle on the head and face with said dangerous weapon and with a glass bottle * * *."

The indictment was based upon ORS 163.250. The two defendants were tried separately. Gibbons, who was tried first, was found guilty.

The two defendants and the complaining witness, Cyril Bierle, pursuant to invitation, came to a dwelling house in Chiloquin known as the Lotches home at about 10 a.m. in the morning of November 11, 1959. Before

long some three or four cronies joined them. Although the appointments of the home were scanty and included neither a rug for the floor nor a clock for the telling of time, its guests made such ample provisions for allaying the thirst that had Bacchus himself entered the house he would have felt at home and given it an accolade. The invitation to the group was for breakfast, but the evidence mentions wine as the item that engaged the principal attention of the group. Later John Barleycorn put in an appearance and when a repeated demand arose for his wares he returned. The party, if such it may be called, lasted until midnight or later. In its course there was some conversation, seemingly some eating and a considerable amount of drinking. One guest strummed a guitar. At about midnight the altercation upon which the indictment is based broke out. By that time the copious quaffs of alcoholic beverages which some of the revelers had taken had placed them securely in the arms of Morpheus. They had not sought out any bed or lounge, but lay draped over chairs or other objects wherever the spirits fermenti had deposited them. They took no part in the encounter which we will presently describe, either as participants or as onlookers. They were completely de hors de combat even as witnesses. But the two defendants were still awake and active. If the state's evidence reflects the truth, they were looking for new fields, or at least for small men to conquer.

About 11:30 p.m. the defendant-appellant Hood, according to Bierle, pulled him off of a couch where he had been sleeping and demanded of him $2. When the demand was ignored Hood pinned Bierle's arms behind him, so Bierle swore, while the other defendant (Gibbons) struck him several times, principally upon the head, with the stove poker that is mentioned in the

indictment. The stove poker is a metal rod about 2½ feet long and possibly ⅜ of an inch in diameter. The metal of which it is made permits it to be bent without excessive effort. Bierle swore that after Gibbons had struck him several times with the poker Hood released his hold and thereupon hit Bierle over the head with an empty wine bottle which broke upon the impact. In the encounter Bierle at one point fell to the floor and Hood did likewise.

Hood and Gibbons gave a different version of the affray. They denied that Bierle had been asleep. According to them, Bierle sought to provoke a fight with Hood, who declined to become engaged, and thereupon Bierle found himself in an encounter with Gibbons. Gibbons denied that any stove poker or empty wine bottle played a part in the fight. He seemed anxious to have the fracas identified as one of pure fisticuffs in which he vanquished his opponent. However, if the account he gave is true, the combatants were badly matched. Bierle, a light weight, had taken on, according to the two defendants, a younger man who was substantially heavier than a middleweight.

Photographs were taken of Bierle a few hours later after he had received attention from a physician. They show that he had many wounds and that his ribs were taped for fracture. A physician removed particles of glass from his scalp and closed a wound in the latter by means of stitches. Patches of adhesive were required by wounds in Bierle's face and neck. The foregoing will suffice for present purposes as a statement of the facts.

■ The defendant-appellant's brief manifests scarcely a nodding acquaintance with our rules that are intended to afford the court a ready grasp of the case

and facilitate its access to the parts of the record that need attention. Citations to the transcript of evidence are few. An appellant should cite the page of the transcript where the challenged instruction can be found or where this court can locate a requested instruction which the appellant says should have been given. Likewise, appellant should cite the page of the record where evidence was excluded which he says should have been received or was admitted over his objections. In addition, the challenged ruling and ancillary matter should be quoted. When those simple rules are followed no undue burden is placed upon the appellant, but this court can thereupon perform its duty expeditiously and with a feeling that it found the material which the appellant had in mind. Notwithstanding the fact that those simple rules were largely neglected in the preparation of appellant's brief we have read with care the transcript of the trial. We did so because this is a criminal case. We will overlook the nonconformity of appellant's brief with our rules; they resulted possibly from the limitations of the young man who prepared those parts. But the fact that our rules, which govern the preparation of a brief, are frequently haughtily contemned where they could have rendered valuable help justifies the remark that there is a limitation beyond which patience and sufferance will not permit themselves to be driven.

The first assignment of error complains because the trial judge received in evidence as an exhibit the stove poker which Bierle, the complaining witness, says was used upon him by Gibbons while the defendant-appellant Hood held his arms behind his (Bierle's) back. The assignment of error states:

"* * * the poker was not in the same condition as it was at the time of the incident. * * *"

It explains:

> "* * * The poker had been used in evidence on the first trial and at which time it had one slight bend in it * * *."

It is claimed that when it was received in evidence in the trial of the defendant-appellant Hood it had indications of two bends. By the term "the first trial" the defendant-appellant refers to the trial of Gibbons which preceded Hood's. The poker played a part in that trial.

■ When the district attorney offered the poker in evidence he at once conceded that it was not in exactly the same condition as it was when Gibbons, according to Bierle, struck him with it. The state immediately presented evidence showing the change that had occurred. It claimed, however, that sight of the poker would be useful to the jury in its determination of the issue as to whether the object was a dangerous instrument. When the poker was produced, Bierle was asked:

> "Q  Mr. Bierle, is this stove poker, state's exhibit A for Identification, still in the same condition now as it was earlier, or at the time you testified to?
> "A  No, sir.
> "Q  What is the difference?
> "A  It has a bend in it, that is the difference, it wasn't bent before.
> "Q  At what time?
> "A  At the time before I laid down to go to sleep."

Following the testimony just quoted other testimony was received showing the change that had occurred in the poker; seemingly the change was slight. In ruling that the poker was admissible, the trial judge declared:

> "The Court is going to admit the exhibit, and instruct the jury to the effect that the poker itself is not bent now as it was in the beginning."

Subsequently, upon Bierle's cross examination, he gave other testimony describing the poker before it was used upon him.

As a witness for the defendant Mrs. Lotches, who had owned and used the poker for many years, gave extensive testimony which traced the condition of the poker before and after the altercation. It was in Mrs. Lotches' home that the alleged beating occurred. The testimony of this witness mentioned an additional bend of slight consequence in the poker.

Surely, with scores and scores of questions and answers which described with meticulous detail the bends and other imperfections of this poker together with the time when they occurred, no juror could have thought that the object was in the same condition at the trial as on the night of November 11, 1959, nor could he have failed to understand that some change occurred during Gibbons trial or shortly thereafter.

█ It is not necessary that an object which is offered in evidence should be in precisely the same condition at the moment of its offer as at the time when it played a part in the occurrence which gave rise to its offer in evidence. But, the change in its condition must not have been wrought for unjustifiable purposes, and it must not be of sufficient moment so that the exhibit will mislead. Normally the receipt in evidence of the object under such circumstances is committed to the sound discretion of the trial judge. That is especially true in a case such as this where the witnesses, in describing the changes, rendered the record replete with the word "indicating." ORS 41.660; *White v. Keller et ux*, 188 Or 378, 215 P2d 986; *Morris v. Miller*, 83 Neb 218, 119 NW 458; *State v. McGuire*, 84 Conn 470, 80 A 761, 38 LRA NS 1045; *Levy v. State*, 28 Tex App 203, 12 SW 596, 19 Am St Rep 826; Wigmore on

Evidence, 3rd ed. § 1154; Conrad, Modern Trial Evidence, § 734; and 20 Am Jur, Evidence, § 719, p 602.

This assignment of error discloses no merit.

■ The second assignment of error charges that the trial judge erred when over the defendant's objections he received as exhibits the photographs of Bierle, which we have mentioned, and which showed the dressings upon his wounds. The defendant-appellant argues that the photographs were immaterial and "calculated only to arouse the sympathy, passion and prejudice of the jury." We believe that the photographs were material to the state's burden to establish the commission of the crime charged in the indictment. The photographs did not depict gruesome scenes—and even if they had, they would have been admissible. Wigmore on Evidence, 3rd ed, § 1157, and *State v. Henderson*, 182 Or 147, 184 P2d 392. This assignment of error discloses no merit.

■ The third assignment of error complains because the instructions told the jury that:

"* * * included within the indictment in this case are the lesser crimes of Assault and Battery While Unarmed by Means of Force Likely to Produce Great Bodily Harm, and Assault and Battery Not Being Armed with a Dangerous Weapon. * * *"

The jury found the defendant guilty of neither of the crimes which the judge said were included in the charge stated in the indictment but of the crime which was actually charged. Thus, if we may assume that the quoted instruction erred, it afforded the defendant additional opportunities for the improvement of his condition and could have done him no harm. But the instruction did not err: *State v. Ragan*, 123 Or 521,

262 P 954 (paragraph 15). We dismiss this assignment of error as without merit.

■ The fourth assignment of error complains because an instruction upon the element of intent of the kind which was the subject matter of this court's decision in *State v. Braley,* 224 Or 1, 355 P2d 467, was not given to the jury. The defendant at no time testified that he was intoxicated or that he was unaware of what he and the others were doing. The incidents that occurred in the hour prior to the time that Bierle received his injuries and which were reported by this defendant could not have been perceived by him had he been intoxicated. He commented about the amount of wine that Bierle was drinking, that he drank directly out of the jug and that Gibbons protested declaring that there were others who wanted some of the wine for themselves. This defendant also testified to the conversation in which he was engaged and finally added that Bierle sought to provoke a quarrel with him resulting eventually in an effort by Bierle to strike him. According to this defendant, he stepped back, whereupon Bierle became engaged in an encounter with Gibbons. This defendant testified that he sought to part those two would-be fighters, and then finally reconciled himself to the developing struggle in this way:

> "I thought well, if he wants to fight let him fight. So him and Gibbons got with it and started fighting. After a little while they quit and Bierle left."

It is clear that this defendant did not represent himself as intoxicated or incapable of forming an intent. Further, we can find in the record no requested instruction of the kind that we considered in the Braley case. We reject this assignment of error as lacking in merit.

■ The fifth assignment of error reads as follows:

"The defendant submits that it was error not to instruct that the intent necessary to perform the acts charged must coincide with said acts or act."

An instruction which was given to the jury reads:

"Assault is defined as any attempt or offer, with force, or violence, to do a corporal hurt to another, whether from malice or wantonness, with such circumstances as denote, at the time, an intention to do it, coupled with a present ability to carry such intention into effect."

Although that instruction was not couched in the words of the defendant's requested instruction it conveyed the same meaning. We believe that it sufficed and we dismiss this assignment of error as without merit.

■ The sixth, being the last, assignment of error is stated as follows:

"The defendant submits that it was error in instructing the jury that there was a presumption of intent by use of a dangerous weapon in that the presumption is not conclusive, which fact the court failed to advise the jury."

The appellant's brief neither cites nor quotes the instruction of which he complains. It mentions ORS 41.360 which is the enumeration of 39 statutory disputable presumptions. It singles out no one of them. Possibly the instruction which the defendant has in mind is one that reads as follows:

"I instruct you that the intent to injure the one assailed may be inferred from the assault."

The second of the disputable presumptions enumerated in ORS 41.360 reads: "An unlawful act was done with an unlawful intent." We do not believe that the instruction just quoted contains error.

The defendant's trial was conducted fairly. He produced several witnesses. All of the testimony which he and his witnesses offered was received. No testimony to which he objected was admitted. The instructions were unusually complete and detailed. Bierle's injuries, including the glass taken from his scalp, have not been contested. Only the defendants had any difficulty with him.

The judgment of the circuit court is affirmed.