Argued July 8, affirmed September 12, petition for rehearing
denied November 5, 1969, petition for review denied by
Supreme Court January 20, 1970

## STATE OF OREGON, *Respondent, v.*
## DWIGHT LOREN SMITH, *Appellant.* -

458 P. 2d 687

154

*Howard R. Lonergan,* Portland, argued the cause and filed the briefs for appellant.

*Robert E. Brasch,* District Attorney, Coquille, argued the cause for respondent. With him on the brief was Jerry O. Lesan, Deputy District Attorney, Coquille.

LANGTRY, J.

Defendant was indicted in Coos County for first degree murder as a result of an armed robbery in which the victim was shot and killed. Venue was changed to Douglas County where defendant was tried and found guilty of second degree murder by jury verdict.

Defendant has appealed from the verdict, making eight assignments of error.

In the first assignment, defendant contends that the trial court erred in refusing to issue a certificate

for attendance of a Massachusetts expert witness material to the defense. ORS 139.210 et seq., is Oregon's enactment of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. ORS 139.230 provides:

"If a person in any [other] state * * * is a material witness in a prosecution pending in a court * * * a judge of such court *may* issue a certificate * *. *." (Emphasis supplied.)

The Act provides that the certificate go to a court of the witness's state of residence, if that state has the Uniform Act. That court determines whether the witness will attend the trial.

In the case at bar the defendant requested certificates for two weapons experts, one each from California and Massachusetts, as witnesses to counter the testimony of the state's weapons expert. When the request was made before trial, the trial judge ordered witness fees and travel expenses for both witnesses to be paid in advance, but denied the certificates on the ground that an expert cannot be required to give opinion testimony. In a letter to the judge before trial, defendant's counsel renewed his request for the certificates.

The expert from California attended the trial and testified for defendant on all material matters upon which the state's expert testified, and upon which the Massachusetts expert allegedly could have testified had he been present. The Massachusetts expert had agreed to come to the trial, but mistook the date and came a week late. He returned the $655 warrant that had been sent him for fees and expenses, saying the error was his. Defendant's counsel rested without moving for continuance or making other motion or obser-

vation regarding the absent witness or alleged need for his testimony. Until well after the trial was over, the trial judge had no way of knowing that defendant was not satisfied with the quality or quantity of weapons-expert testimony he actually had been able to produce.

In a Memorandum denying motion for a new trial, the trial judge indicated that he was still of the opinion that the witness could not have been required to testify to opinion evidence, and that the desired testimony of the Massachusetts expert was given by one or more witnesses who did testify. He said that there was no assurance that, had a certificate been issued, the Massachusetts expert would have attended, and that blame for his late arrival could be laid entirely at the doorstep of the defendant. These reasons may have merit, but we believe that when defendant, after having elicited the testimony he did from the California expert, rested his case without moving for a continuance, he waived any remedy he might have had concerning the absent witness. Furthermore, the language quoted above from ORS 139.230 makes it within the discretion of the trial judge whether he will issue a certificate for an out-of-state witness. Although we find no Oregon case that is directly in point, *State of Oregon v. Blount, Sr.*, 200 Or 35, 264 P2d 419, 44 ALR2d 711 (1953) discussed the Act.[1] Mr. Justice Lusk, in the majority opinion in that case, stated that a motion for a continuance arising out of application of the Act is addressed to the discretion of the court. It follows that it

---

[1] The specially concurring opinion of Mr. Justice Latourette in *Blount* leaves doubt whether the Uniform Act was applicable at all in the case at bar, for he said, "It was to the unwilling witness that the act was directed." 200 Or at 59. As noted, the out-of-state witnesses in this case were quite willing to come.

also is a reasonable interpretation of the Act that discretion is placed in the trial judge to decide whether a certificate shall issue. If the rule were otherwise, a defendant, by claiming materiality of witnesses, might make so many demands for their attendance that expense and delay would seriously impede or prevent the administration of justice.

In *Thompson v. United States*, 372 F2d 826 (5th Cir 1967), and *Findley v. United States*, 380 F2d 752 (10th Cir 1967), federal courts held that even after the language of the federal rule requiring district judges to issue subpoenas for witnesses was changed from "may" to "shall," it was still discretionary with the court whether to issue such subpoenas at public expense. We conclude that defendant was not prejudiced by reason of the trial judge's refusal to issue the certificate.

The second assignment of error asserts that "all knowledge and information" obtained (1) from an April 17, 1967, lineup, which included the defendant without the presence of defendant's counsel, and (2) from certain witnesses shown defendant's photograph, or shown the defendant by himself, should have been suppressed. The third assignment of error covers the same subject matter.

■ With reference to the lineup conducted without defendant's counsel being present, the claim of error is based upon *United States v. Wade*, 388 US 218, 87 S Ct 1926, 18 L ed 2d 1149 (1967), and *Gilbert v. California*, 388 US 263, 87 S Ct 1951, 18 L ed 2d 1178 (1967). In *Stovall v. Denno*, 388 US 293, 87 S Ct 1967, 18 L ed 2d 1199 (1967), the Supreme Court held that the *Wade* and *Gilbert* rules should be applied prospectively. In *State v. Thompson*, 253 Or 430, 455 P2d 179 (1969), the Oregon Supreme Court un-

equivocally adopted the same rule for Oregon. The date of prospective application set up in *Stovall* is June 12, 1967. The lineup in which defendant appeared was held on April 17, 1967; hence, the *Wade/Gilbert* rule is not applicable to the case at bar.

■ With reference to the second point under these assignments, the rule as stated in *Stovall* is that a claimed violation of due process of law in the conduct of a confrontation between witness and accused by photo or in person depends upon the totality of the circumstances surrounding it. This rule was subsequently explained in greater detail in *Simmons v. United States*, 390 US 377, 88 S Ct 967, 19 L ed 2d 1247 (1968). There, the court indicated that it was not prohibiting identification by witnesses through the employment of individual photographs of the defendant and said:

> "* * *[W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification * * *." 390 US at 384.

In *Crume v. Beto*, 383 F2d 36 (5th Cir 1967), two eyewitnesses to a daylight armed robbery were taken to see defendant in jail after having been shown his pictures. They positively identified him as the robber. He was not put in a lineup. The court held that there was no denial of due process either from showing the individual pictures or from having the witnesses make the individual identification. The court noted that the witnesses were intelligent people who had had ample

opportunity to see the defendant at the robbery and that they were positive in their identification. The court stated that their positive eyewitness identification alone was enough to sustain the conviction. The *Crume* opinion considered the precedents cited by this defendant in arriving at its decision.

■ At least five witnesses positively identified Smith, the defendant, as the armed robber who shot the victim in a small parking area adjoining the victim's cafe in a daylight robbery in the downtown section of Coos Bay. The parking area was in full view of the adjoining streets. Each of these witnesses saw him at close range, and he wore no mask or other similar device. Neither the observation of defendant standing alone in the police station by one of these witnesses during the investigatory process, nor the fact that pictures of defendant in a group of pictures shown witnesses were in color while the others were not, nor that another witness saw him in custody in jail clothes before identifying him was as suggestive as the procedures approved in *Crume*. There is no basis for the due process challenge of these assignments.

In the fourth assignment of error, defendant contends that the trial judge should have allowed him to use two police officers' notes about witness interviews in cross-examination of those witnesses for impeachment purposes.

■ The trial court did not refuse to allow defendant's counsel to see the notebooks. They were marked as exhibits without objection from the prosecutor. The notebooks were not excluded as a basis for cross-examining the officers who made them. What was disallowed was the use of the notes in an attempt to establish prior

inconsistent statements of other witnesses. The thrust of the defendant's argument appears to be that the notes should have been used as though they were complete statements in themselves. The matter was raised several times by counsel. The trial court told counsel, as the rulings were made, that the officers could be required to testify as to the statements of the witnesses recorded in their notebooks, and the whole statements thus recollected would have been available for impeachment. The trial court's ruling was correct. As stated in *State v. Jacobs*, 252 Or 433, 436, 450 P2d 542 (1969), "Notes of an investigating officer are usually fragmentary and, therefore, do not lend themselves to impeachment as readily as statements."

■ If counsel wished to test the permissibility of using the possibly incomplete or inaccurate knowledge gained from the notebooks, he could have posed impeaching questions to the witnesses on cross-examination.

> "* * * [B]ut before this can be done, the statements must be related to him, with the circumstances of times, places and persons present * * *." ORS 45.610.

Counsel also could have done so upon asking the court to recall the witnesses for further cross-examination. He laid no such foundation, and defendant cannot now be heard to complain. *State v. Sing*, 114 Or 267, 289, 229 P 921 (1925).

For his fifth assignment of error the defendant claims that when the court gave the statutory definition of malice with reference to second degree murder it was in error.

ORS 161.010(4) defines malice as importing "a

wish to vex, annoy or injure another person, established either by proof or presumption of law." The gist of defendant's argument is that this statutory definition which has been in existence for many years is inapplicable to the word "malice" as it is used in the definition of second degree murder. Defendant is correct in saying the definition applies only "unless the context requires otherwise." ORS 161.010. There is substance to defendant's contention. A person might intentionally "annoy" another and not bear him malice.

> "* * * [T]he term 'malice' means hatred, ill will or hostility to another, but this is not necessarily its meaning in law. In its broadest legal sense, it means the state of mind of a person, irrespective of his motive, whenever he consciously violates the law * * *." Clark & Marshall, Crimes 279 (7th ed 1967).

ORS 163.010(1) and 163.020(1) make clear the intention that a definition of malice be given to a jury in a murder case other than felony murder. In this case the context did not require a definition of malice.

The evidence and the verdict necessarily disclose that the jury found the defendant to be the lone person who was committing an armed robbery when the killing occurred. The evidence, without question or contradiction, was that the victim and one Martin Johannessen were talking together. The victim had in cash in his hands several thousand dollars which he had just brought from a bank across the street, and, in accordance with his custom, was about to take into his cafe for use in cashing paychecks of workmen who patronized his business. The assailant held a gun on the victim and when Johannessen moved he turned, shot at him and missed; assailant turned back to the victim, who refused to give up the money, and while

he was trying to pull it from his hand the gun fired again, and the victim fell. He died soon after of his wound. Money flew in every direction, but some remained in his grasp. The assailant, with gun in hand, gathered up some of the money and fled in an automobile parked nearby with its engine running. In support of the instruction given, such conduct on the part of the assailant could be interpreted only as importing a wish to "injure" another; as importing hostility toward the victim.

■ However, we need not decide whether the substance of the instruction was correct. ORS 163.010(1) provides that "Any person who * * * in the commission of or attempt to commit * * * robbery * * * kills another, is guilty of murder in the first degree." The statute in such a situation does not require proof of malice. The act of robbery is *per se* malicious. Only first degree murder should have been submitted to the jury.

> "* * * Where, however, the *evidence* of a homicide shows that it was committed in the perpetration of * * * one of the felonies enumerated in the statute defining murder in the first degree, *and not otherwise,* an instruction on the different degrees of homicide is improper * * *." *State v. Wilson*, 182 Or 681, 685, 189 P2d 403 (1948). (Emphasis supplied.)

To the same effect see *State v. Brown*, 7 Or 186, 210 (1879), *State v. Ellsworth*, 30 Or 145, 47 P 199 (1896), and *State v. Jensen*, 209 Or 239, 263, 289 P2d 687, 296 P2d 618 (1957).

■ Although lesser offenses should not have been submitted, and due to this the statutory definition of malice should not have been given in the case at bar, the defendant was not prejudiced. In *State v. Hood*,

225 Or 40, 356 P2d 1100 (1960), the trial judge instructed on lesser included offenses. Defendant was convicted of the crime charged. On appeal, defendant contended error in the instruction of the lesser included offenses and the Oregon Supreme Court said: "* * * [I]f we may assume * * * the * * * instruction erred, it afforded the defendant additional opportunities for the improvement of his condition and could have done him no harm." 225 Or at 48. In a first degree murder case very similar to the instant case, where the jury convicted of second degree murder, the Kansas Supreme Court (*State v. Yargus*, 112 Kan 450, 211 P 121, 27 ALR 1093 (1922)), rejecting a claim of error based upon the instruction on the included crime, grounded its decision "* * * upon the soundness of the principle that the defendant should not be allowed to derive an advantage from an error from which she suffered no injury, but, on the contrary, derived a benefit." See also *State v. Lindsey*, 19 Nev 47, 5 P 822, 824 (1885). The alleged error did not harm defendant, because only first degree murder should have been submitted. If that only had been submitted the finding the jury did make necessarily indicates he would have been found guilty of first degree murder. Second degree murder should not have been submitted. Thus, defendant benefited from this error, and will not be allowed to "derive an advantage" therefrom, regardless of whether the malice instruction was or was not erroneous.

The court instructed the jury in the words of ORS 44.370:

"A witness is presumed to speak the truth. This presumption, however, may be overcome by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character or

motives, or by contradictory evidence. Where the trial is by the jury, they are the exclusive judges of his credibility."

In the sixth assignment of error, defendant claims use of this instruction nullified the presumption of innocence to which defendant was entitled.

■ The claim would merit serious consideration had the defendant not put on a case. However, the defendant took the stand, produced eight other witnesses and undertook to impeach state's witnesses. *United States v. Boone*, 401 F2d 659 (3d Cir 1968); *United States v. Johnson*, 371 F2d 800 (3d Cir 1967); *United States v. Meisch*, 370 F2d 768 (3d Cir 1966). In the *Boone* case the court said:

> "When only prosecution witnesses have testified, the presumption of truth may be tantamount to an assumption of guilt in the jury's mind, and thus conflict with the presumption of a defendant's innocence. Where, as here, both parties have produced witnesses, neither is favored by the presumption of truth * * *." 401 F2d at 661.

There is no merit to this assignment of error.

After the trial, defendant moved the trial court to allow "interview of jurors by defense investigator to determine if any matter exists to the knowledge of such jurors which would be the basis for a motion for a new trial."

No cause was alleged or shown why the jurors should be interviewed, except the conjecture that investigation might turn something up. The motion was denied, and this is assigned as error.

■ Fishing expeditions of this nature after trial by disappointed litigants seeking some presently unknown but possible cause for a new trial are uni-

versally condemned. *Parker v. Gladden*, 245 Or 426, 407 P2d 246 (1965), cert. granted 385 US 363, 87 S Ct 468, 17 L ed 2d 420 (1966); *Miller v. United States*, 403 F2d 77 (2d Cir 1968); *Bryson v. United States*, 238 F2d 657 (9th Cir 1956), cert. den. 355 US 817, 78 S Ct 20, 2 L Ed 2d 34 (1957); *United States v. Provenzano,* 240 F Supp 393 (D NJ 1965). *United States v. Driscoll,* 276 F Supp 333 (SD NY 1967), distinguishes the cases upon which defendant relies, pointing out that in *Parker v. Gladden*, 385 US 363, 87 S Ct 468, 17 L ed 2d 420 (1966), in which the Oregon Supreme Court was reversed (245 Or 426, 407 P2d 246 (1965)), and in *United States v. McMann*, 373 F2d 759 (2d Cir 1967), the information as to the improper conduct was already known or suspected when the court countenanced the inquiry which had been made. No such cause is asserted here, and denial of the motion was proper.

The eighth assignment of error is merely reiteration of the previous assignments.

The judgment is affirmed.

FORT, J., specially concurring.

The indictment in this case charges that the defendant "purposely and of deliberate and premeditated malice" killed another. It does not charge the commission of felony murder. It is well established that the trial court normally shall instruct on all of the degrees of homicide under such an indictment. *State v. Ellsworth*, 30 Or 145, 47 P 199 (1896). The trial court properly followed this rule.

The court here holds that the jury should have been instructed only on felony murder, relying on *State v. Reyes*, 209 Or 595, 303 P2d 519, 304 P2d 446, 308 P2d 182 (1957), and *State v. Wilson*, 182 Or 681, 189 P2d 403 (1948).

In the former case, the Supreme Court held that it was proper to introduce evidence of felony murder, and to instruct thereon, under an indictment charging a defendant not under the felony murder clause but for a killing committed under the "purposely and of deliberate and premeditated malice" clause. In that case, however, the court did instruct on all of the degrees of murder. The trial court here followed that procedure.

The indictment in *State v. Wilson*, supra, charged a killing under the felony murder clause, not one committed under the "purposely and of deliberate and premeditated malice" clause. The language quoted from the majority opinion was set forth in relation to a felony murder indictment, and in my view is so limited in that opinion. Thus I find it necessary to decide whether the instruction on malice was prejudicial. The defendant here, after all, was not convicted of first degree murder, but of second degree. Neither party objected to the submission of second degree murder to the jury.

I believe that the court, under the circumstances of this case, did not err in its instructions defining "maliciously" as used in the second degree murder statute. ORS 163.020 defines second degree murder:

> "(1) Any person who kills another purposely and maliciously but without deliberation and premeditation * * * is guilty of murder in the second degree."

Here the defendant filed no requested instruction relating either to second degree murder or to the meaning of the words "malice" or "maliciously." The instruction defining "maliciously" was given substan-

tially in the language of the statute. ORS 161.010 states:

> "As used in the statutes relating to crimes and criminal procedure, unless the context requires otherwise:
> "* * *
>
> "(4) 'Malice' and 'maliciously' import a wish to vex, annoy or injure another person, established either by proof or presumption of law."

The legislature has the right reasonably to define the terms employed in the statutes which it enacts. It was not in my view error here to instruct on second degree murder, nor was any exception taken thereto by either party.

Since I believe the jury was adequately instructed concerning the crime of which he was convicted, I concur in the result.