Argued January 20, affirmed February 25, petition for rehearing
denied March 21, petition for review denied May 16, 1972

STATE OF OREGON, *Respondent, v.*
GAYLORD S. DREW, *Appellant.*
494 P2d 270

*James R. Strickland* and *Gary K. Jensen,* Eugene, argued the cause for appellant. With them on the brief were Dwyer, Jensen & Kulongoski, and Hansen, Curtis, Hendershott & Strickland, Eugene.

*John W. Osburn,* Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

Defendant Drew was jointly indicted with Jerome P. Foster, tried separately, and convicted by jury of first degree felony murder. He appeals from the resulting judgment, alleging numerous errors, part of which do not merit discussion.

■ In the indictment it is alleged that the defendants "in the commission of and attempt to commit armed robbery," shot the victim. Defendant demurred to the indictment, claiming it charged more than one crime: namely, murder, armed robbery and assault with intent to commit armed robbery.

■ The demurrer was overruled, which defendant assigns as error.

ORS 163.010 provided that "any person who * * * in the commission of or attempt to commit * * * robbery * * * kills another * * *" is guilty of first degree felony murder. The indictment here

charges in the words of that statute. The decision in *State v. Hinkle,* 33 Or 93, 54 P 155 (1898), illustrates the difference between a defectively duplicitous allegation and an allegation like that in the case at bar. There, the indictment alleged defendant aided in a murder occurring in the commission of and attempt to commit robbery, and, also, in the same count, alleged that defendant, after the murder, concealed the other alleged principal and destroyed evidence of the murder. Only the after-the-fact allegations of the indictment were held duplicitous. The indictment in the case at bar was legally sound. *State v. Merten,* 175 Or 254, 152 P2d 942 (1944).

The rest of the assignments of error relate to the trial. The state produced overwhelming direct and circumstantial evidence that defendant Drew, with four others, planned and executed an attempted armed robbery of the victim's "mom & pop" grocery store in Eugene. Four of the group carried guns. At least two of the guns were loaded. When the victim was confronted by three of the armed robbers in his store, he turned away. Defendant Foster fired two shots from the automatic .30 caliber carbine he was carrying, but both shots missed. At the same time, defendant Drew shot the victim with a load of .00 buckshot from the 12-gauge shotgun he carried. The robbers immediately fled. In spite of a massive wound in the abdomen the victim lived for several hours, and told his wife, police and medical personnel what had happened and described his assailants. All of the guns except the shotgun were recovered by police several days later under circumstances that linked defendant Drew to them. Shell casings left at the scene positively identified the .30 caliber carbine thus recovered. A state's witness, an accomplice who acted as lookout for the

robbery, identified a rifle recovered near the store as one which he lost when he fell while fleeing. He also testified that preceding and on the night of the murder nine men had conspired together to rob drug pushers; that they divided into two groups; that he was in the group which Drew led; and that after they started out Drew changed the plan, resulting in the store robbery.

■ ■ Defendant asserts the trial court refused to allow pretrial discovery of state's evidence. Our examination of the record discloses that the court was liberal in allowing defendant discovery in accordance with Oregon's criminal statute, ORS 133.755.

■■ ■ Defendant claims the court erred in not allowing his motion for a current transcription of the evidence at state expense each day of the trial, asserting a wealthy defendant could afford such a transcript—hence, he should have one. Defendant was entitled to a fair trial, with counsel and a transcript for purposes of appeal. But he has pointed to no prejudice he suffered because his motion for daily transcript was not allowed. The court appointed two able counsel for him, and after trial a transcript was provided—1616 pages of it. Two hundred eighty pages of this transcript is jury *voir dire* examination, not one word of which was necessary for or in any way helpful to this appeal.

■ ■ A prosecution witness whose testimony linked Drew closely to the weapons was shown by the defense, in an attempt at impeachment, to have criminal charges pending against her. Defendant sought to prove that she had been promised immunity on those charges for testifying against defendant. In rebuttal, the state showed that the witness previously had made statements consistent with her testimony. Defendant

asserts it was error to allow this. The court instructed the jury that such rebuttal evidence was to be considered only in determining whether the witness had a self-interest in testifying for the state. After the defense opened the question of credibility, as it did, the prosecution was entitled to bolster its witness's credibility as it did. *State v. Wong Wen Teung,* 99 Or 95, 195 P 349 (1921).

■ ■ ■ Defense counsel moved for mistrial eleven times. Several of these motions followed overruled objections to references to a conspiracy among nine men to rob drug pushers, which changed during execution to robbery of the store. Testimony was that the groups departed at about the same time and returned to Drew's house on the same night. Defendant Drew collected weapons from individuals in both groups when they returned. Their activities had the manifestations of a comprehensive plan for armed robbery. Evidence of it was relevant to show that the purpose at the grocery was to rob. Its relevance overweighed its prejudicial effect. *State v. Graf,* 6 Or App 243, 487 P2d 92, Sup Ct *review denied* (1971). Further, testimony of the whole plan was reasonably necessary to give the jury an understandable picture of defendant's activities at the time in question. Our quotation with approval in *State v. Raiford,* 7 Or App 302, 490 P2d 1036 (1971), from *McKee v. State,* 488 P2d 1039 (Alaska 1971), is in point:

> "[Even though it indicates defendant was involved in a separate offense] * * * 'evidence is admissible when it tends to complete the picture or set the stage for the crime for which the defendant is being tried.'
>
> "* * * This ordinarily includes such background facts as where the witness was, how he hap-

pened to be there, and what interrelationship he may have had with other persons present * * *." 488 P2d at 1041.

■ ■ Motions for mistrial followed testimony from witnesses that several days after the murder, after police had recovered guns used in the robbery and defendant learned they had, in talking with the witnesses defendant referred to a particular person as having probably informed the police. Defendant made a threat to kill the person thus identified and said, "once you can kill, you can always kill." Such statements, repeated in testimony, certainly were prejudicial to defendant, but they were statements against interest which are allowed as an exception to the hearsay rule. They also were relevant, in the context of the case, to the question of whether defendant was the one who had killed the victim. Their relevance overweighed their prejudicial effect. See *State v. Graf,* supra, and *State of Oregon v. Long,* 195 Or 81, 244 P2d 1033 (1952).

■■ ■■ Defendant, in connection with his rejected motion for acquittal, argues that the decision in *State v. Branch,* 244 Or 97, 415 P2d 766 (1966), should apply in this assault with intent to commit robbery case. *Branch* holds that an assault resulting in death merges into second degree murder so that only murder, not assault and murder, can be charged. The effect of defendant's argument, if it were successful, would be nullification of the first degree murder statute insofar as it applies to deaths inflicted during assaults with intent to commit robbery. The *Branch* decision was made for the purpose of preserving the distinction between degrees of murder and manslaughter. 244 Or at 100. It is not applicable here. Defendant also argues that refusal to instruct on second degree felony murder

and several unlawful acts as a basis for a manslaughter instruction was error. The court instructed correctly. See *State v. Smith,* 1 Or App 153, 163, 458 P2d 687 (1969), Sup Ct *review denied* (1970).

Affirmed.