Argued October 4, affirmed October 29, petition for rehearing
denied November 21, 1973, petition for review denied
January 3, 1974

STATE OF OREGON, *Respondent, v.* DAVID
LOYDE REMINGTON (No. 27230),
*Appellant.*

515 P2d 189

*Charles D. Burt,* Salem, argued the cause for appellant. With him on the brief were Brown, Burt & Swanson, Salem.

*Tim Wood,* Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Scott McAlister, Assistant Attorney General, Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

SCHWAB, C. J.

The defendant was convicted of criminal activity in drugs contrary to ORS 167.207,[1] i.e., furnishing heroin to an undercover agent. His codefendant in the joint jury trial was one Kip Hughes, who was acquitted of the same charge.

On appeal defendant makes two contentions: (1) that it was error to permit the undercover agents to testify as to how they happened to make contact with the defendant and Hughes; and (2) that the two verdicts were inconsistent, and therefore the verdict of guilty as to defendant Remington must be set aside.

The undercover agents testified that they had been advised by an informant to contact a man named

---

[1] "(1) A person commits the crime of criminal activity in drugs if he knowingly and unlawfully manufacturers [sic], cultivates, transports, possesses, furnishes, prescribes, administers, dispenses or compounds a narcotic or dangerous drug." ORS 167.207 (1).

Quentin who could sell them heroin. As a result of this contact, Quentin arranged a meeting in a park in Corvallis between the undercover agents and Remington and Hughes. While Quentin was present the sale of heroin to the undercover agents was consummated.

■ The defendant argues that mention of Quentin and the informant could well have led the jury to believe that he was involved in a large-scale sale of drugs. We do not think such an inference was likely. Furthermore, a party cannot be required to "sanitize" his evidence by deleting background information to the point that the evidence actually presented seems improbable or incredible to some degree. *State v. Raiford*, 7 Or App 302, 305-06, 490 P2d 1036 (1971). *See also, State v. Drew*, 8 Or App 471, 494 P2d 270, Sup Ct *review denied* (1972); *State v. Seay*, 8 Or App 514, 495 P2d 41 (1972); *State v. Dixon*, 5 Or App 113, 481 P2d 629, Sup Ct *review denied* (1971), *cert denied* 404 US 1024 (1972).

■ With regard to defendant's second assignment of error, the facts do not support his contention.

> "Most modern authorities subscribe to the view that criminal verdicts as between two or more defendants tried together need not demonstrate rational consistency." Annotation, 22 ALR3d 717, 723 (1968).

We have been cited no case indicating that Oregon appellate courts have ruled on this question, and we need not reach it here, for the verdicts were not inconsistent. The conversations surrounding the sale involved only the defendant Remington. At no time in the presence of the undercover agents did the defendant Hughes speak, handle any heroin or receive any money. The only evidence that "tied" Hughes to

the transaction was his presence and the fact that Remington referred to him as his partner. Furthermore, both defendants claimed "mistaken identity" and the identification evidence implicating Hughes was weaker than that implicating the defendant Remington. The record discloses facts from which a jury could well have decided that there was proof beyond a reasonable doubt of the guilt of Remington, but not of Hughes.

Affirmed.