Argued December 17, 1973, affirmed February 5, reconsideration denied March 13, petition for review denied April 9, 1974

## STATE OF OREGON, *Respondent, v.* GEORGE RANSOME KETCHUM (No. 40094), *Appellant.*

518 P2d 660

*Robert C. Cannon,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Doyle L. Schiffman,* District Attorney, Roseburg, argued the cause for respondent. With him on the brief was Brian R. Barnes, Deputy District Attorney, Roseburg.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

FOLEY, J.

Defendant was convicted by jury of criminal activity in drugs (furnishing marihuana to a 17-year-old by a 24-year-old, a Class A felony). ORS 167.207 (1), (4). He received a sentence of four years. He appeals, assigning as error the failure of the court to allow his motions for mistrial and his objections to the admission of certain evidence.

A statement of the facts is necessary to an understanding of defendant's assignments of error. A 17-year-old boy named Alexander testified that he purchased marihuana from defendant on May 1, 1973, at Wilbur, Oregon, using marked money (a five dollar bill, four one dollar bills and four quarters) which had been furnished him by police officers. The police officers had followed him and observed the purchase from a distance. The juvenile stated that he had, a short time previously, purchased LSD (lysergic acid diethylamide) from defendant and had "freaked out on it" and had become nervous as a result. It was because of this LSD incident three or four days earlier that he had gone to the police and it was at this latter time that the police arranged for him to make a buy.

Defendant and one Don Korthals had cabins adjacent to one another in Wilbur with a camper trailer belonging to Korthals parked beside the Korthals' house. The Alexander boy testified that on the occasion when he purchased the LSD defendant procured it from a camper. Korthals was present with defendant at the time of the alleged sale of the marihuana to Alexander. The police testified that they observed both defendant and the boy at the time of this sale and continued to have the boy under surveillance until they picked him up on the road a few moments later, at which time he handed them the plastic baggie of marihuana which he said he had bought from defendant. Promptly thereafter the police went to defendant's residence where they contacted defendant and Korthals, who were together. A consent search of defendant and his home revealed nothing, but a search of Korthals' person produced a marked five dollar bill. Then in a search of Korthals' home they found in a dresser drawer the four marked one dollar bills and four quarters and in

the same drawer on a cake tray beside the money was a quantity of marihuana and marihuana paraphernalia consisting of pipes, cigarette papers, seeds, etc., which the officers seized. The defendant himself testified that the Alexander boy gave him the $10 at the time and in the denominations described but stated that it was in repayment of a loan to him. He denied the sale.

Defendant first complains of the court's failure to grant his motion for a mistrial when the prosecutor in his opening statement mentioned the defendant's prior sale of LSD to Alexander. Defendant objected and moved for a mistrial on the ground that this was an attempt by the prosecutor to bring in evidence of other crimes. The prosecutor responded that the LSD sale and its consequences were necessary in order to explain how the police got into the act, otherwise it would appear that the police were "going out and getting kids to * * * buy drugs * * *." The trial court denied the motion for mistrial and admitted evidence of the LSD sale in the course of the trial. While this evidence was prejudicial to the defendant as tending to show the commission of another crime, we conclude its relevance outweighed its prejudicial effect. It was relevant to explain the involvement of the police in arranging for the juvenile to become involved in a narcotic purchase and its proper admission we ground upon what has been termed the practical principle of testimonial completeness. *See State v. Raiford,* 7 Or App 302, 490 P2d 1036 (1971); *State v. Remington,* 15 Or App 170, 515 P2d 189 (1973), Sup Ct *review denied* (1974). It

"* * * complete[s] the story of the crime on trial by proving its immediate context of happenings near in time and place. * * *" McCormick, Evidence 448, § 190 (hornbook series, 2d ed 1972).

We conclude that this motion for mistrial was properly denied and that defendant's objection to the introduction of evidence of the LSD sale was properly overruled.

■ The second portion of defendant's motion for mistrial was based upon statements made by the prosecutor in his opening statement concerning the "* * * drug paraphernalia and other items of contraband, LSD and marijuana" found with the marked money in the dresser drawer in Korthals' house. The basis of defendant's motion was that the prosecutor was introducing evidence of other crimes. These items were admitted in evidence over defendant's objection.

■ An inference that defendant and Korthals were in some way in concert could be drawn from the fact that defendant obtained the LSD from Korthals' camper and that Korthals was present with defendant when the marihuana sale was made and part of the marked money was found on Korthals' person and part in his dresser drawer. Whether defendant had access to drugs from which to make a sale was a relevant consideration in the case. The circumstance that the marked money wound up in a close-at-hand source of supply of narcotics permits an inference that the defendant had such access. This evidence was admissible on the same basis as that covered in defendant's first assignment of error. The defendant denied the sale. We conclude that its relevance as circumstantial evidence tending to support the charge against him outweighed its prejudicial effect. *See also State v. Sanchez,* 14 Or App 234, 511 P2d 1231, Sup Ct *review denied* (1973). It was not error to deny the motion for mistrial and similarly not error to allow the challenged evidence to be received.

■ The third assignment of error involves the denial of a motion for mistrial when the prosecutor asked the defendant if he was responsible for any threats against Alexander, the witness for the prosecution. This witness had previously testified that he knew of no threats having been made. The following pertinent colloquy occurred:

"Q [OF DEFENDANT BY PROSECUTOR] Have you caused your brothers to make threats against Mr. Alexander about his testimony here today?

"[DEFENSE COUNSEL]: I would object to this, Your Honor.

"THE COURT: Objection sustained.

"[DEFENSE COUNSEL]: I would like to make a motion at this time.

"THE COURT: I will let you make it later. Go ahead.

"Q [PROSECUTOR] Have you had any discussion with your brothers about this case?

"A [DEFENDANT] No, sir, I haven't.

"Q They haven't visited you in jail?

"A Well —

"[DEFENSE COUNSEL]: I'm going to object to this, Your Honor. This is out of the scope of direct. There was nothing gone into it on direct.

"THE COURT: This line of questioning is beyond the direct. Sustained.

"* * * * *

"[DEFENSE COUNSEL]: I would like to move for a mistrial, Your Honor, on the basis that the questions asked of the defendant on cross examination as attempts to— threats brought against— I believe the question was asked of the defendant as to threats made by the defendant's brother. Now, on the State's case in chief, in asking

their own witness Mr. Alexander about any threats, he said, no, there were not. So, I don't feel that the question was made in good faith. There was no basis for it, merely seemed to be bringing along through the case—trying to bring up this witness to an acceptable level, and then even in closing, the Court had to excuse the jury because it was treading— the argument was heading in this direction, and this is precisely what my previous motion was directed at, that these insinuations by his questions, he had no basis for asking.

"THE COURT: The objection to the question was sustained. The Court feels the mere asking of it was not prejudicial. The motion is denied. Have the jury come back. You have an exception?"

"The general rule is that a motion for mistrial is addressed to the sound discretion of the trial court, and its exercise will not be upset except for a clear abuse. [Citations omitted.]" *State v. James Edward Smith*, 4 Or App 261, 263-64, 478 P2d 417 (1970).

The Alexander boy was obviously reluctant from the commencement of his testimony to be a witness against the defendant. The court at one point had to require him to answer a pertinent question. After a noon recess in the trial the boy failed to return for a continuation of his redirect examination by the prosecutor. The court sustained the objection to the challenged question and the court stated in ruling that it did not feel that the asking of the question was prejudicial. Under the circumstances revealed here, we believe the trial court was in the best position to decide the prejudice issue, which points up the wisdom of the general rule quoted above. We find no abuse of the court's discretion.

Affirmed.